CLARK A. PRESTON & LAUREN MERRIAM v. WM. D. YOUNG.

*Novation—Promise to pay another's debt.*

A firm of lumber dealers made a contract with a firm of manufacturers whereby the latter were to convert the timber on certain premises into shingles and siding. The manufacturers made an independent contract with a logger to cut the timber and haul it to the mill, but as they were slow in making payment, the logger went to the dealers for payment and they verbally agreed to pay him on orders from the manufacturers. Several payments were made in this way, but when the logger tried to obtain a final settlement they refused to pay him the balance, and he brought suit on the agreement. *Held* that it could not be maintained. There was no novation except so far as the orders were actually given; and the verbal agreement was a promise to pay another's debt, and, under the statute of frauds, could not be enforced.

Error to Montcalm. Submitted Apr. 14. Decided Apr. 27.

ASSUMPSIT. Defendant brings error. Reversed.

*Smith & Sessions* for plaintiff in error. A promise to pay another's debt is void: *Bresler v. Pendell* 12 Mich. 224; *Welch v. Marvin* 36 Mich. 61; *Hill v. Raymond* 3 Allen 540; *Baker v. Ingersoll* 39 Mich. 158; *Gower v. Stuart* 40 Mich. 747; 1 Throop Verb. Agreements 195, 209.

*Ellsworth & Sapp* for defendant in error. A promise to pay the debt of another is not void where its purpose is also to benefit the maker: *McCreary v. Van Hook* 35 Tex. 631;

*Tisdale v. Morgan* 7 Hun 583;. *Dyer v. Gibson* 16 Wis. 557; *Barker v. Bradley* 42 N. Y. 316: 1 Amer. 521.

GRAVES, J.   July 6, 1878, Preston & Merriam entered into a written contract with John A. Taft and Amasa Wilder by which the latter agreed to place a shingle and siding mill on certain premises specified, and convert the pine timber thereon into shingles and short siding, for which said Taft & Wilder were to have three-fourths of said shingles and two-thirds of the siding.   It was also agreed that Preston & Merriam should have the right of selling Taft & Wilder's share of the shingles at market price in lots not to exceed two and one-half millions at a time, except one-tenth to be deliverable to Hayes & Webber as fast as cut, and that five cents per thousand should be allowed and paid for this service.

The contract further provided that whenever Taft & Wilder should deliver at .the railroad two hundred and fifty thousand shingles, Preston & Merriam should advance to them two dollars per thousand on stars and one dollar per thousand on No. 1.

The arrangement was to continue for two years from October 10, 1878, unless in consequence of some default on the part of Taft & Wilder, Preston & Merriam should elect to terminate it sooner.   It is needless to refer to the other stipulations.

Taft & Wilder erected the mill and then bargained with Young to take the timber standing, cut and haul it to the mill and place it on the roll-way for thirty-five cents per thousand. . Young consequently became a sub-contractor under Taft & Wilder for part of the service they had agreed to render.   The transactions were not dependent but in contemplation of law entirely distinct.   The duties and obligations pertaining to each were exclusive of the duties and obligations of the others.   The parties to one could hold each other to payment and performance without regard to the other, and neither contract could be impaired except by its own parties.   All this may be supposed to have been well understood by the plaintiff and defendants.

Young went on under his contract with Taft & Wilder until into February, at which time he had about 3800 logs in the mill yard. He had run up a debt to Merriam for feed and Taft & Wilder were owing him a larger sum. He complained of being unable to obtain payment, and proceeded to call on Preston & Merriam in order to effect some arrangement, and this action depends on the transaction which then occurred. The interview was at Edmore. Taft & Wilder were neither present nor concurred in it. Preston & Merriam were both present and Preston's son was also by. They agree as to what the arrangement was but contradict Young. There was no writing. As the case is presented it is necessary to confine attention to Young's version.

He testifies that he told Preston & Merriam he could stock the mill no longer unless they paid him; that he could not work without money; that he claimed the logs as his until paid his thirty-five cents per thousand, and that, if they did not pay him, he would take the logs to another mill, "to get something out of them;" that he asked if they could not pay him something on the amount already due him from Taft & Wilder; that Merriam then agreed to credit him on his individual account for the accrued indebtedness, and Preston agreed that, if he would go on and stock the mill for them, they would pay him the money on each lot of 371,000 shingles, provided he brought orders from Taft & Wilder; that with this understanding he went on and thereafter obtained orders from Taft & Wilder on Preston & Merriam and the latter continued to cash them until July; that he then went to see them to make a final settlement, and "they claimed another bargain" and refused to pay the residue of his demand. He also testifies that he had nothing to do with Taft & Wilder; that he did not work for them and was not to look to them for his pay.

This is nothing more than an explanation of what his purpose was and an expression of his own idea of the nature and effect of the transaction. It cannot control the legal operation of the undoubted facts. The orders were all drawn with direct reference to the liability of Preston &

Merriam to Taft & Wilder under their written contract, and they all plainly and positively recognized that that contract continued pending and operative in favor of Taft & Wilder against Preston & Merriam, and their purport plainly negatived the idea of their being instruments to carry out a new original agreement between Young and plaintiffs in error for stocking the mill. No ordering by Taft & Wilder of the kind thus made use of and acted on by Young and plaintiffs in error would have been necessary or appropriate in respect to a distinct original agreement to which Taft & Wilder were not parties. These orders are of great force as evidence of the actual construction which the parties themselves put on the transaction. It was only through them that Young obtained the money from plaintiffs in error under the arrangement at Edmore, and it was on them alone as requests of Taft & Wilder to pay, and as vouchers against Taft & Wilder, that the plaintiffs in error made payment. Preston & Merriam were not discharged from their liability to Taft & Wilder, and the extent of their undertaking to Young was to pay him whenever by so doing the payment would apply on their liability to Taft & Wilder. They did not mean to be liable twice over for the same thing: once to Taft & Wilder and again to Young, and they took pains to avoid it. Their agreement with Young was not an original one; but merely an undertaking to pay on the debt or obligation of Taft & Wilder as the latter should order: and hence it contemplated a novation in just so far as it should be actually carried out. In short the essential feature of the arrangement was that Taft & Wilder were to be Young's debtors, and hence in a situation in which it would be practicable and appropriate for them to order the plaintiffs in error as their debtors to make payment to him.

Taking Young's testimony in connection with the orders which are not questioned, and it makes a case which admits of only one construction. The promise relied on is within the statute of frauds, and not enforceable for want of writing. Comp. L. § 4698, subd. 2. It was an undertaking to pay for Taft & Wilder. The version given by the defendants of

the transaction at Edmore most manifestly entitled them to a verdict if believed. The court however refused a request to that effect, and submitted the case under instructions which authorized the verdiet in Young's favor.

The judgment should be reversed with costs and a new trial granted.

The other Justices concurred.

--------•--------

46 107
77 299

46 107
82 31

46 107
96 616

46 107
110 218

46 107
113 449

46 107
117 206

46 107
128 207

46 107
157 ¹ 53