## WINCHESTER v. CHABUT.

1. PHYSICIANS AND SURGEONS—MALPRACTICE—EVIDENCE.

Lack of direct evidence of an alleged act of negligence on part of defendant in an action of malpractice is not fatal to plaintiff's case when there is evidence from which an inference to that effect may legitimately be drawn.

2. SAME—MALPRACTICE—LEAVING COTTON GAUZE SURGICAL SPONGE IN INCISION—EVIDENCE.

In action for malpractice wherein it was claimed defendant had left a cotton gauze surgical sponge in incision when wound from open surgery reduction of a comminuted fracture of plaintiff's right femur was closed by sutures, whether or not defendant was guilty of such negligence *held,* a question for jury where, notwithstanding defendant's testimony that a 15-inch square piece of gauze folded and refolded into a 3-inch square would encapsulate and extrude in one mass at one open-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–7] 41 Am. Jur., Physicians and Surgeons, § 128.
[2, 3, 5, 7, 10] 41 Am. Jur., Physicians and Surgeons, § 97.
[2, 3, 5, 7, 10] Leaving sponge or other foreign matter in incision. 65 A.L.R. 1023.
[4] 41 Am. Jur., Physicians and Surgeons, §§ 108–111.
[4] Consent to surgical operation. 76 A.L.R. 562; 139 A.L.R. 1370.
[4] Character and extent of surgical operation authorized by patient. 26 A.L.R. 1036; 53 A.L.R. 1056.
[6, 7] Hospital records as evidence. 75 A.L.R. 378; 120 A.L.R. 1124.
[8] 20 Am. Jur., Evidence, §§ 975, 1215.
[8] Admissibility and weight of mortality tables as evidence affected by lack of normal health. 116 A.L.R. 416.
[11] 41 Am. Jur., Physicians and Surgeons, § 129.
[11, 14] Expert evidence supporting malpractice action. 141 A.L.R. 5, at p. 24.
[13] 41 Am. Jur., Physicians and Surgeons, § 87.
[14] 41 Am. Jur., Physicians and Surgeons, § 131.
[16] 15 Am. Jur., Damages, §§ 89, 90, 198.
[16] Payment of salary affecting recovery for loss of time. 18 A.L.R. 678; 95 A.L.R. 575.

ing, there was testimony that bits of gauze might extrude from the several abscesses occasioned by leaving gauze sponge in the wound.

3. SAME—MALPRACTICE—LEAVING COTTON GAUZE SURGICAL SPONGE IN INCISION—EVIDENCE.

That leaving a cotton gauze surgical sponge in incision when wound from open surgical reduction of a comminuted fracture of plaintiff's right femur was closed by sutures is not good medical practice need not, but may be, shown by expert witnesses.

4. SAME—MALPRACTICE—REDUCTION OF FRACTURE—EXPLORATORY OPERATION.

Whether or not defendant physician who had made an open surgery reduction of a comminuted fracture of plaintiff's right femur should have made an exploratory operation when abscesses occurred after the surgery *held*, a question for jury under the expert testimony presented.

5. SAME—MALPRACTICE—SURGICAL REDUCTION OF FRACTURE—MAL-UNION—EVIDENCE.

Where doctors testifying for defendant and plaintiff agreed that latter had not enjoyed the normal recovery to be expected in the absence of untoward occurrences at or after operation involved in reduction of comminuted fracture of right femur and that X-ray pictures show malunion of the bone which could result from infection caused by leaving a surgical sponge in the wound, there was evidence to support verdict for plaintiff. hence such verdict may not be said to be against the great weight of the evidence.

6. SAME—MALPRACTICE—HOSPITAL RECORDS—CURING ERROR.

Error, if any, in ruling in malpractice case that hospital record was inadmissible for lack of sufficient identification was cured by its subsequent admission.

7. SAME—MALPRACTICE—INSTRUCTIONS—HOSPITAL RECORD—SURGICAL SPONGES.

Value of hospital record as to number of sponges used in open surgical reduction of a comminuted fracture of plaintiff's right femur being for jury under record affirmatively showing that postoperative count accounted for all sponges used, the failure to give defendant's request to charge that absence of notation that no sponge was missing showed none was left in wound, was not error.

8. EVIDENCE—EXPECTANCY OF LIFE—MORTALITY TABLE.

Where testimony as to condition of plaintiff's health prior to leg injury was in dispute, court did not err when he instructed jury that expectancy shown by mortality tables is based on the average duration of life of normally well men.

9. PHYSICIANS AND SURGEONS—MALPRACTICE—RIGHT TO OPERATE IN CERTAIN HOSPITAL.

The mere asking of question in malpractice case as to whether defendant was not permitted to operate in a certain hospital *held,* not to have resulted in reversible error where objection thereto was made and sustained and question left unanswered, no request to charge was made with respect thereto and it does not appear jury was prejudiced.

10. SAME—MALPRACTICE—ARGUMENT TO JURY—SUTURING OF FASCIA LATA—SPONGE IN WOUND.

Where plaintiff's attorney in malpractice case arising from open surgery reduction of a comminuted fracture of right femur had medical books on counsel table in view of jury, his statement in closing argument that medical books contain examples of stretching and suturing the fascia lata over the bulk of an underlying sponge although defense expert testimony was that this could not be done, *held,* not to have constituted prejudicial error, where objection was made and court cautioned jury to disregard it and plaintiff's expert witness that plaintiff's physical condition and postoperative history are consonant with, and such as might have resulted from, leaving a sponge in the wound.

11. SAME—MALPRACTICE—OPINION EVIDENCE.

It is within the province of an expert witness to give opinion evidence as to whether a defendant was guilty of malpractice by commission or omission.

12. SAME—MALPRACTICE—INSTRUCTIONS—SKILL, CARE AND KNOWLEDGE REQUIRED.

In a malpractice action it is not error for court to instruct jury that the degree of skill, care and knowledge required of defendant is that ordinarily possessed and exercised in the community in which defendant treated plaintiff or communities similar to such community.

13. SAME—MALPRACTICE—GOOD PRACTICE—EVIDENCE—SIMILAR COMMUNITY—JUDICIAL NOTICE.

Evidence as to what constitutes good practice in Lansing was properly admitted in Jackson malpractice action on the theory

that Lansing is a community similar to Jackson since the court might properly take judicial notice of the latter fact.

14. SAME—MALPRACTICE—INSTRUCTIONS—EXPERT WITNESSES.

Instructions in malpractice action *held*, not to have permitted jury to accept or disregard, at its option, the testimony of expert witnesses in concluding whether malpractice occurred.

15. NEW TRIAL—MALPRACTICE—NEWLY-DISCOVERED EVIDENCE—DIL-IGENCE—REMOVAL OF CAST—DIFFERENT RESULT.

Defendant in malpractice action was not entitled to new trial on ground of newly-discovered evidence as to removal of cast from plaintiff's leg where it appears defendant knew he had not removed the cast, by reasonable diligence could have discovered who had removed it and production of such testimony does not appear to have rendered a different verdict probable.

16. DAMAGES—MALPRACTICE—INSTRUCTIONS—EARNING CAPACITY—PENSION—MORTALITY TABLES.

Instruction in malpractice action that plaintiff, a railway engineer, would be limited to proof of difference between what he would have earned had he continued in his occupation to age 70 less what he will receive in pension during such period made it clear that damages were limited to actual loss of earnings due to defendant's malpractice and did not mislead jury as to possibility of death or disability from other causes before age 70 where court had instructed jury as to use of the mortality tables.

Appeal from Jackson; Boardman (Harry D.), J. Submitted January 16, 1948. (Docket No. 23, Calendar No. 43,757.) Decided May 18, 1948. Rehearing denied June 29, 1948.

Case by Rupert E. Winchester against Hector N. Chabut for personal injuries caused by defendant's malpractice. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Phillip C. Kelly* and *H. Attix Kinch,* for plaintiff.

*Kleinstiver & Anderson,* for defendant.

DETHMERS, J. The defendant, a physician, appeals from a judgment for plaintiff for malpractice.

In performing an open surgery reduction of a comminuted fracture of plaintiff's right femur, defendant is alleged to have been negligent in two respects: (1) Leaving a cotton gauze surgical sponge in the incision when the wound was closed by sutures and: (2) failure to reopen and explore the operative area down to the bone when abscesses formed on the upper right leg several months after the operation. Plaintiff claims that because of the presence of the sponge infection occurred, causing abscesses from which pieces of gauze are alleged to have erupted, delaying healing of the bone and, thus, causing malunion, angulation, shortening of the leg and atrophy of thigh muscles, permanently disabling plaintiff from performing his work as a locomotive engineer. Defendant denies that a sponge was left in the wound. He contends that the abscesses were bone spicules working out in the normal process of comminuted fractures; that there was no reason nor occasion for, nor did good medical practice require, performing an exploratory operation when the abscesses occurred; that the angulation was caused by plaintiff bearing weight on his leg too soon after the operation.

There was no direct testimony or evidence that a sponge had been left in the wound, but plaintiff maintains that that conclusion is the only one to be drawn from the fact that pieces of cotton gauze worked out and were discharged from the abscesses at intervals after they had been lanced by defendant. This latter fact defendant explains by his testimony, denied by plaintiff, that after lancing the abscesses defendant inserted cotton gauze strips or wicks therein to facilitate drainage.

Defendant contends that the court should have directed a verdict for him because there was neither direct nor medical nor scientific evidence establishing or tending to establish the leaving of a sponge

in the wound and no evidence of malpractice. Lack of direct evidence of the alleged act of negligence is not fatal to plaintiff's case when there is evidence from which an inference to that effect may legitimately be drawn. *LeFaive* v. *Asselin,* 262 Mich. 443. Defendant insists that the extrusion of several pieces of cotton gauze from different abscesses is not evidence from which it may be inferred that a gauze sponge was left in the wound because testimony of doctors sworn for the defense was that the physical reaction and natural processes in extruding such sponge, consisting of one piece of gauze about 15 inches square and folded and refolded into a 3-inch square, would be to encapsulate it and extrude it in one mass at one opening and that nature in this process does not unfold, separate and twist it in strands and extrude them separately in various places in the manner in which extrusion of gauze is alleged to have occurred in this case. However, the testimony of one of defendant's expert witnesses was that it might conceivably be erupted through one or more abscesses. There was thus a question of fact for the jury and testimony from which an inference might legitimately be drawn that the extrusion of bits of gauze from the several abscesses was occasioned by leaving a gauze sponge in the wound at the time of the operation. That this did not constitute good medical practice need not have been (*LeFaive* v. *Asselin, supra*), but was, shown by the testimony of expert witnesses. As said in *Ballance* v. *Dunnington,* 241 Mich. 383 (57 A. L. R. 262), even the merest tyro would know this was improper. A doctor sworn for the plaintiff testified that, under the history of the case, after the abscesses occurred good practice required more than mere lancing, as was done by defendant in this case, but rather, exploratory surgery to discover the cause of the abscesses. The question of defendant's negligence

or malpractice in this connection was one for the jury.

Defendant also contends that the verdict is against the great weight of the evidence because his experts testified that the presence of a sponge in the wound after suturing would cause certain reactions which did not occur in this case; but the doctor sworn for plaintiff testified that the reactions could be such as plaintiff claims did occur in this case. The doctors testifying for defendant and plaintiff agreed that plaintiff had not enjoyed the normal recovery to be expected in the absence of untoward occurrences at or after the operation; that X-ray pictures show malunion of the bone and that this could result from infection caused by leaving a surgical sponge in the wound. There is competent evidence to support plaintiff's theories in this case and we cannot say that the verdict is against the great weight of the evidence.

Defendant charges as error the court's ruling that the hospital operation record was inadmissible when offered on the grounds that it had not been sufficiently identified. However, when objections were withdrawn later, it was received in evidence. The error, if any, in ruling the record inadmissible was cured by its subsequent admission. Defendant complains of the court's failure to give his request to charge as to the probative value to be given to the absence of any notation on such record of any missing sponge, contending that the court thus conveyed to the jury the erroneous impression that only entries actually made and not the absence of notations thereon have probative value. This record contains certain notations as to sponges, which were explained by the doctor assisting defendant in the operation as showing that 36 sponges were used and that thereafter a count was made and 36 used sponges accounted for. He testified that if the sponge count

at the end of the operation is incorrect a notation thereof is made. The court instructed the jury that they might consider the record as evidence bearing on the question of whether a sponge count was kept and all operative sponges accounted for. Inasmuch as the record purports to bear an affirmative notation that all sponges used were accounted for, the absence of a contradictory notation that they were not all accounted for needed not to be stressed by the court as evidence that the sponges were accounted for. Under the circumstances the value of the record as evidence was properly presented to the jury.

Defendant asserts that the court erred in admitting the mortality tables over his objections because defendant had testified that plaintiff was in ill health and suffering from certain maladies and it is claimed that plaintiff so admitted. However, the doctor sworn for the plaintiff testified that he had examined plaintiff a few days before the trial and found him, aside from the leg condition, to be in good physical condition generally. The court instructed the jury that the expectancy shown by the tables is based on the average duration of life of normally well men. No error was committed in this connection.

Plaintiff's attorney asked defendant on cross-examination whether it was true that he was not permitted to operate in a certain hospital. Objection thereto was sustained and the question left unanswered. Defendant made no request to charge in relation thereto. It does not appear that the jury was prejudiced by the mere asking of the question or that reversible error was committed.

Defendant complains that plaintiff's attorney had medical books on the counsel table in the view of the jury and that in closing argument he stated that medical books contain examples of stretching and suturing the fascia lata over the bulk of an under-

lying sponge, although expert testimony for the defense was that this could not be done. Counsel's statement was objected to and the court cautioned the jury to disregard it. The statement was not supported by evidence and should not have been made, but did not constitute prejudicial error, in view of testimony before the jury of an expert to the effect that plaintiff's physical condition and postoperative history are consonant with, and such as might have resulted from, the leaving of a sponge in the wound.

Defendant insists that the hypothetical questions permitted to be asked of the doctor sworn for the plaintiff were improper in that he was asked whether in his opinion certain things would constitute good medical practice. Defendant says such questions call for an opinion as to the ultimate fact of whether malpractice occurred and thus invade the province of the jury, citing *DeHaan* v. *Winter*, 258 Mich. 293, and *DeGroot* v. *Winter*, 261 Mich. 660. But, in the latter case we said p. 671:

"Upon the issue of whether defendants were guilty of malpractice by commission or omission the expert could and did give opinion evidence."

That is distinctly within the province of the expert witness.

We find no error in the court's charge that the degree of skill, care and knowledge required of defendant is that ordinarily possessed and exercised in communities similar to that in which defendant treated plaintiff (Jackson), the court also having instructed that it must be that possessed in the community in question or similar communities; nor was the court in error in permitting evidence as to what constitutes good practice in Lansing on the theory that it is a community similar to Jackson, since the court might properly take judicial notice of the latter fact. *In re Spears*, 227 Mich. 525. Examina-

tion of the court's instructions impresses us that defendant's complaint is not well founded to the effect that the jury was permitted to accept or disregard, at its option, the testimony of expert witnesses in concluding whether malpractice occurred.

Defendant moved for a new trial on the ground of newly-discovered evidence. This purportedly consists of an alleged admission to a hospital attendant by plaintiff that his family removed the cast from his injured leg by use of a handsaw. Defendant knew at the time he was treating the abscesses on plaintiff's leg that the cast had been removed by another than himself. Had he deemed the manner of its removal material, he could have made inquiry relating thereto. With reasonable diligence he could have discovered this evidence and produced it at the trial. It does not appear, however, that its production would have rendered a different verdict probable.

On the matter of loss of earnings the court instructed the jury that:

"If you find that there were any, it is limited under the proof to the difference between what his earnings would have been had he continued in his occupation as a railway engineer to age 70 less what he will receive in pension during that period of time."

The court having instructed as to use of the mortality tables, it cannot be said that the jury was misled to the effect that damages must be allowed for loss of earnings until age 70 without regard to possibility of death or disability from other causes before age 70. The charge as a whole made it clear that damages in this connection must be limited to actual loss of earnings resulting from defendant's malpractice. Other errors complained of have been

considered, are deemed inconsequential, and do not alter our view as to result.

Judgment affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.