338 F.2d 623
 Estate of Ovidio Garza, Deceased, by Hermenegildo GARZA,
Administrator, Estate of Horfila Garza, Deceased, by
Hermenegildo Garza, Administrator, Estate of Horacio Garza,
Deceased, by Hermenegildo Garza, Administrator, Otilia
Garza, and Hermenegildo Garza, Plaintiffs-Appellants,
v.
INDIANA AND MICHIGAN ELECTRIC CO., a foreign corporation,
Leonard Frank, and Mrs. Leonard Frank, Defendants-Appellees.
 No. 15606.
 United States Court of Appeals Sixth Circuit.
 Nov. 19, 1964.
 
 Argued by George Menendez, Detroit, Mich., Menendez & Hadden, Detroit, Mich., on the brief for appellants.
 Argued by David O. Haughey, Grand Rapids, Mich., Mitts, Smith & Haughey and L. Roland Roegge, Grand Rapids, Mich., on the brief, for Indiana and Michigan Electric Co.
 Leland D. Phelps, Grand Rapids, Mich., Shivel, Phelps, Linsey & Strain, Grand Rapids, Mich., on the brief, for Leonard Frank.
 Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and PRETTYMAN, Senior Circuit Judge.*
 WEICK, Chief Judge.
 
 
 1
 The three decedents and the two other plaintiffs, part of a family of migrant workers, were employed by defendant Frank to pick strawberries on his farm in Berrien County, Michigan. They were residents of Texas, but citizens of Mexico.
 
 
 2
 The strawberry fields were irrigated with a portable irrigation system which irrigated the land in sixty-foot squares with a sprinkler at each corner of the square. Aluminum pipes, three inches in diameter, thirty feet long, and weighing from ten to fifteen pounds, were used to move the water. The system was taken from one field to another as it was needed.
 
 
 3
 A power transmission line belonging to the defendant Electric Company extended above a portion of the strawberry field. There were two lines held up by wooden poles. The lines consisted of a primary conductor, which carried 7200 volts, and a secondary or neutral conductor. The primary conductor was twenty-two feet and six inches above the ground at the point where the fatal contact occurred.
 
 
 4
 On the morning of June 13, 1959, Ovidio Garza, age fourteen, was picking strawberries. He came upon one of these aluminum pipes lying on the ground between the first row of the strawberry patch and the adjacent tomato patch. He lifted the pipe to an approximate vertical position, where it came into contact with the electric distribution line and as a result of this contact he was electrocuted. His thirteen year old brother, Horacio, and his seventeen year old sister, Horfila, attempted to rescue him and they too were electrocuted. His sixteen year old sister, Otilia, and their father, Hermenegildo Garza, also attempted to rescue him and were thrown to the ground. They received serve electrical shocks and burns. Actions for damages for wrongful death and for personal injuries were brought by and for the several plaintiffs in the District Court against the Electric Company and the employer Frank. The cases were consolidated for trial and tried to a jury which returned verdicts of no cause of action in each case.
 
 
 5
 Appellants complain that the District Court committed error (1) in refusing to allow an expert witness to testify concerning customs and usages of power companies with reference to clearances of overhead power lines, and (2) in instructing the jury on the issue of contributory negligence.
 
 
 6
 It was undisputed that the regulations of the Public Service Commission of Michigan required a minimum clearance of fifteen feet between the ground and the distribution line at the location in question.
 
 
 7
 Plaintiffs called Anthony J. Wolf, an expert in electrical engineering, and asked him questions.[1] The questions addressed to the expert were not properly phrased.
 
 
 8
 It was immaterial what clearances were used by the witness or by any particular company within his knowledge. The question should have been asked whether there was any custom or practice in the industry with respect to clearances, and if so, what it was. If there was such a custom, the expert could be asked whether the clearances of the Electric Company conformed to good practice. Schillie v. Atchison, Topeka & Santa Fe Ry., 222 F.2d 810 (C.A.8, 1955); Winchester v. Chabut, 321 Mich. 114, 32 N.W.2d 358 (1948).
 
 
 9
 It was not proper for the expert to testify as to whether the Electric Company should have foreseen that the irrigation pipes might be raised vertically. While ordinarily a hypothetical question is not rendered incompetent because it may involve an ultimate fact, here the question of foreseeability related entirely to the ultimate fact, which was within the province of the jury to determine upon consideration of all of the evidence in the case. The jury did not need the testimony of an expert to determine this issue.
 
 
 10
 In ruling on the admissibility of questions addressed to an expert, the District Judge had discretion, and his ruling ought not to be disturbed in the absence of a clear abuse. Rhynard v. Filori, 315 F.2d 176 (C.A.8, 1963).
 
 
 11
 On the issue of contributory negligence the record shows that plaintiff and the Electric Company submitted special requests to the court to charge the jury. The court complied with the requests and counsel argued the case to the jury. After the court's charge, counsel for plaintiffs took an exception to the charge on contributory negligence on the ground that there was no evidence which required a charge on this issue.
 
 
 12
 The Electric Company rested its case at the close of plaintiffs' evidence. On consideration of other testimony in the case, we think that reasonable minds might differ on the issue of contributory negligence, and it was the duty of the court to submit the issue to the jury.
 
 
 13
 It was not part of the duties of the strawberry pickers to move or to handle the aluminum pipe. No explanation was given as to why Ovidio picked it up. The jury had the right to consider the testimony as to the age, education, intelligence and experience of the children. Plaintiffs had previously worked in fields in California where similar irrigation systems were used.
 
 
 14
 No complaint was made about the court's charge to the jury. The court was careful not only to define contributory negligence, but also the 'Rescue Doctrine' which is applicable in Michigan. Brown v. Ross, 345 Mich. 54, 75 N.W.2d 68 (1956); Rovinski v. Rowe, 131 F.2d 687 (C.A.6, 1942).
 
 
 15
 One may not complain of rulings which he invited the court to make. Cranston Print Works Co. v. Public Service Co., 291 F.2d 638 (C.A.4, 1961).
 
 
 16
 Affirmed.
 
 
 
 *
 Sitting by designation from the U.S. Court of Appeals for the District of Columbia Circuit
 
 
 [1]
 'Q. Thank you, Mr. Wolf, do you in your work, or does anyone in your own knowledge or experience, ever use clearances higher than those prescribed in this code, as a matter of custom or business usage?
 'The Court: Just a moment.
 'MR. HAUGHEY: Your Honor, I think it may be immaterial what this witness may do in his own design. If he can tell us as to the general custom, this may be pertinent. But I think as to his own practice in designing such systems, I think this is probably immaterial.
 'THE COURT: Objection sustained.
 'Q. Through your own knowledge or experience, do you know whether or not anyone, any power companies, for instance, ever use clearances higher than those in the codes, as a matter of custom or business usage?
 'A. Yes, sir.
 'MR. HAUGHEY: Your Honor, I think the question is not properly phrased.
 'THE COURT: Objection sustained.
 'Q. Mr. Wolf, do you know whether, as a matter of custom or business usage, there are any power companies who use clearances higher than those prescribed in this minimum code as a matter of--
 'THE COURT: Just a moment, now. You won't answer any question, Mr. Wolf, until Mr. Haughey has had an opportunity to object.
 'All right, Mr. Haughey.
 'MR. HAUGHEY: Well, the same objection, Your Honor. (43) This is limited to the particular--
 'THE COURT: Same ruling; objection sustained.
 '(44) Q. (By Mr. Hadden). Mr. Wolf, I am going to ask you a series of questions calling for expressions of your professional opinion. These questions will be based upon an assumed set of facts. I want you to assume these facts for the purposes of the questions and base your answer upon them and upon no others.
 'Assume that there is a 7200-volt electric power distribution line running overhead above a certain portion of a strawberry field in Berrien County, Michigan, in June of 1959. One span of this line with which we are concerned is a 260-foot span fastened at one end to a 30-foot wooden pole, and at the other to a 35-foot wooden pole. It is a single-phase line, consisting of one primary and one neutral conductor. It was erected in 1937.
 'Assume further, that on June 13, 1959, a 14-year-old boy who had been working in the field picked up a length of 3-inch diameter aluminum irrigation pipe 30 feet long which weighed approximately 10 to 15 pounds. He lifted it into contact with the primary conductor at a point where that primary conductor was 22.25 feet above the earth. This boy was killed by electrocution. Two other persons who attempted to free this boy and touched his body were also killed. A fourth and fifth person, his sister and his father, who also attempted to free him, were injured but not killed. * * *
 '(45) Assume that in Berrien County, Michigan, since 1955, there was widespread use of irrigation on farms. Further assume that it was common practice to use, in connection with this widespread irrigation, these 3-inch aluminum pipes, the standard length of which was 30 feet. And assume further that they were frequently carried about the various parts of the fields, sometimes from one part of a field to another several times in one day, and from field to field several times within the space of a week; and that usually these pipes were carried by two men, but occasionally by one.
 '(51) Mr. Wolf, I want you to continue assuming the facts that we had previously assumed, and assume this, further:
 'Assume that the power company responsible for the maintenance of this particular line knew and had known for a period of more than a year of the use of 30-foot aluminum irrigation pipes in the vicinity of this line and adjoining spans of the same line.
 'Do you have a professional opinion, based upon your own professional knowledge and experience, of what that power company ought to have done in June of 1959, having knowledge of all these factors?
 'THE COURT: Just a moment.
 'MR. HAUGHEY: Your Honor, I think the question, again, is improper.
 '(52) THE COURT: Highly improper. It goes to the ultimate question to be resolved by this jury, and I see no need of expert testimony on this issue.
 'Q. (By Mr. Hadden) Mr. Wolf, if we assume that the power company responsible for the maintenance of this line knew of the extensive use of 30-foot aluminum irrigation pipes in the vicinity, do you have a professional opinion as to whether they should have foreseen that these pipes may have been raised vertically under the power lines?
 'MR. HAUGHEY: Your Honor, I object to this. I think it is improper.
 'THE COURT: It is improper, and it will cease. It is an effort to put before the jury the opinion of this witness over the sustained objection. The jury will ignore both the questions and the answers. There are no answers; they will ignore the questions. It is highly improper for them to be asked under these circumstances.'