## STOUFFER v. FLETCHER.

BILLS AND NOTES—BONA FIDE PURCHASERS — BURDEN OF PROOF. Where, in an action by a transferee on accepted drafts, it appears that the acceptances were obtained from the drawee by the drawer's fraud, the burden is upon the plaintiff to show that he is a bona fide holder.

Error to Kent; Wolcott, J. Submitted October 9, 1906. (Docket No. 21.) Decided November 13, 1906.

Assumpsit by Joseph C. Stouffer against Edward Fletcher and Caroline Fletcher, copartners as E. Fletcher & Company, upon certain drafts. There was judgment for defendants, and plaintiff brings error. Affirmed.

This suit is based upon two drafts for $95 each, drawn by the Puritan Manufacturing Company of Iowa City, Iowa, upon the defendants, a copartnership, doing business in Grand Rapids, Mich., under the firm name of E. Fletcher & Co., and accepted by them. One was payable four and the other six months after date. The Puritan Manufacturing Company is a manufacturer of cheap jewelry. Its agent, one McClain, a traveling salesman for the Puritan Manufacturing Company, visited the defendants, and solicited an order. The defendants are father and daughter. The father was confined to the house from illness, and the daughter managed the business, a small dry goods store. The consideration for these two drafts, with two others executed at the same time, was an order for jewelry. This order was part of a contract which provided that, before becoming valid, it was to be accepted by the Puritan Manufacturing Company, and that company might at its option reduce the amount of the order. Defendants, with their plea, gave notice that they would show upon the trial that the order

was obtained by fraud; that the contract was canceled and terminated before plaintiff had acquired any rights thereunder, and that he was not a bona fide purchaser for value before maturity. Plaintiff introduced the accepted drafts, and rested. Defendants gave evidence tending to show that McClain tried to induce defendant Caroline at defendants' store to give an order; that she declined; that the agent and Caroline then went to the house of defendant Edward, and he refused; that Caroline returned to the store, leaving McClain and her father at the house; that McClain soon returned to the store and informed Caroline that her father had concluded to make the purchase, and, upon the strength of this representation, the order was given by her and a copy of the contract left with her. Returning to the house in a few hours, she informed her father what she had done, and what the agent McClain had said. The father denied any such agreement. Thereupon, McClain was immediately notified by defendant Caroline of the fact, who demanded the cancellation of the order; that McClain agreed to this, and took up the contract; that some 10 days thereafter the Puritan Manufacturing Company notified defendants of the shipment of the goods. Defendants promptly notified the Puritan Manufacturing Company of the action of their agent, and refused to accept the goods.

Two special questions were submitted to the jury, namely:

"Did the plaintiff in this case purchase from the Puritan Manufacturing Company, of Iowa City, Iowa, on January 7, 1905, the two drafts for which this suit was brought, as plaintiff alleges in his deposition, and was the plaintiff the owner of the drafts when this suit was brought?

"Did the plaintiff have actual notice at the time of such purchase that the defendants in this case claimed that said drafts had been procured through the fraud of the Puritan Manufacturing Company or its agent?"

The first question was answered in the negative, the second in the affirmative. The case was submitted to the

jury under instructions as to the law, and a verdict rendered for the defendants.

*Don E. Minor* (*R. P. Howell*, of counsel), for appellant.

*Knappen, Kleinhans & Knappen*, for appellees.

GRANT, J. (*after stating the facts*).    The assignments of error relate to the charge of the court, and the refusals to give certain requests preferred by the plaintiff.    The substance of most of the requests was correctly given in a clear and well-connected charge, a practice, we think, much preferable to reading each specific request.    The evidence was ample to sustain the finding that the order and the drafts based thereon were obtained by false representations, and were void in the hands of the Puritan Manufacturing Company.    The court correctly instructed the jury that if they so found, the burden of proof was then upon the plaintiff to show that he was a bona fide holder. This was correct.    *Berry* v. *Whitney*, 40 Mich. 65; *Conley* v. *Winsor*, 41 Mich. 253; *Horrigan* v. *Wyman*, 90 Mich. 121; *Township of Grant* v. *Township of Reno*, 114 Mich. 41.

The court held, as requested by plaintiff, that this was an Iowa contract.    The false representations upon which the contract is based were made in Michigan, and the rules of procedure in our own courts must prevail.    The court, however, said to the jury that if the drafts were obtained by fraud, it was then the duty of the plaintiff "in the language of the Iowa statute, to show that he was a holder in due course."    He further instructed the jury:

"The circumstances coming to the knowledge of the purchaser before the purchase of said instrument must be such as to require that he shall, in good faith, inquire as to the validity of the acceptances, and it is only where the failure to inquire evinces an actual bad faith that such notice is sufficient.    *    *    *    It must be shown, either directly or by circumstances that the purchaser had notice

of such infirmity. Simple proof of such facts and circumstances as will put a reasonable man upon inquiry in relation thereto is not sufficient."

This appears to be the rule in Iowa. *Lake* v. *Reed,* 29 Iowa, 260; *Lehman* v. *Press,* 106 Iowa, 390. It is strenuously urged by plaintiff's counsel that the evidence conclusively shows that the plaintiff was a "holder in due course." On the contrary, there was ample evidence to support the finding of the jury that the plaintiff was not in fact the owner of these drafts, but that they were still owned by the Puritan Manufacturing Company, and that the plaintiff was a mere "stool-pigeon" or "fence," used for the purpose of avoiding the defense of fraud. The cross-examination of plaintiff afforded evidence sufficient to justify the finding of the jury that he was not a bona fide holder and purchaser of these drafts in due course. But there was other cogent evidence to support such finding. It is unnecessary to state the evidence.

The case was properly submitted to the jury, and the judgment is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.