LIVINGSTON v KROWN CHEMICAL MANUFACTURING, INC

Docket No. 55550. Argued January 7, 1975 (Calendar No 2).—Decided May 27, 1975.

Krown Chemical Manufacturing, Inc., agreed to purchase all the stock of Marsano, Inc. Leonard and Lillian Marsano, majority shareholders of Marsano, Inc., were to receive $31,000 and 2,000 shares of Krown capital stock for their shares. Jack K. Livingston and others, the minority shareholders, were to receive $46,000 for their shares. Krown failed to pay the $46,000 and the minority stockholders brought an action against Krown for specific performance and against the Marsanos for other relief. The Wayne Circuit Court, Edward F. Bell, J., finding that there were misrepresentations by the sellers, denied minority stockholders specific performance but awarded them $46,000 as damages. The judge rejected Krown's counter-claim for rescission, confirmed the Marsanos' right to retain the $31,000 and the 2,000 shares of Krown stock, rejected the Marsanos' counterclaims against Krown and required Leonard Marsano to assign to Krown a certain patent. The Court of Appeals, Holbrook and Van Valkenburg, JJ. (V. J. Brennan, P. J., dissenting), affirmed (Docket No. 11870). Defendant Krown Chemical Manufacturing, Inc., appeals, contending that damages cannot be awarded when specific performance has been denied because of the plaintiffs' fraudulent conduct. Krown also asserts that it had a right to rescind because of misrepresentations by Leonard Marsano. *Held:*

1. The deficiencies in plaintiffs' pleadings which stated that damages would be inadequate and incalculable do not preclude an award of damages as an alternative to specific relief.

2. The combination of delay in tendering the Marsano, Inc. stock and the transfer to Krown of Marsano, Inc. assets justify the trial court's decision not to award rescission.

3. The cause is remanded to the trial court for a statement

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Pleadings §§ 120–124.
[2] 71 Am Jur 2d, Specific Performance § 216.
[3, 4] 19 Am Jur 2d, Corporation §§ 1006–1011.

on the record of why the $46,000 damage award to the plaintiffs was not reduced on account of the nondisclosure of a liability of Marsano, Inc., which resulted in an understatement of liabilities of the corporation and for modification of the award if it appears warranted.

50 Mich App 153; 212 NW2d 775 (1973) affirmed.

1. PLEADING—CIVIL ACTION—RELIEF—JOINDER—COURT RULES.

The General Court Rules of 1963 were intended to abolish the distinctions between law and equity insofar as practicable, and under them a pleader may properly join claims for legal and equitable relief (GCR 1963, 12, 111, 203).

2. PLEADING—SPECIFIC PERFORMANCE—DAMAGES.

Deficiencies in a complaint by sellers of stock of a corporation which sought specific performance of an agreement to purchase the stock and stated that compensation in damages would be inadequate and incalculable do not preclude an award of damages as an alternative to specific performance, and amendment of the pleadings after judgment "in affirmance of the judgment" is allowed by statute (MCLA 600.2311).

3. CONTRACTS—RESCISSION—CORPORATIONS—STOCK.

Refusal to award rescission to the buyer of a contract to purchase the stock of a corporation was justified where there was a delay in tendering the stock until several months after the asserted basis for rescission had become known to the buyer and there had been a sale by the buyer of much of the assets of the corporation and a transfer of some of the assets to the buyer.

4. DAMAGES—CORPORATIONS—LIABILITIES—NONDISCLOSURE—REMAND.

A case is remanded to the trial court for a statement on the record of why a damage award to sellers of stock of a corporation was not reduced on account of misrepresentation of the liabilities of the purchased corporation and for possible modification of the award if it appears warranted where the trial court concluded that the nondisclosure of a $12,750 liability resulted in an understatement of the liabilities of the purchased corporation.

*Craig, Farber & Stein, P. C.,* for defendant-appellant Krown Chemical Manufacturing, Inc.

*John H. Norton,* for defendants-appellees Leonard Marsano and Lillian R. Marsano.

LEVIN, J. Marsano, Inc. was engaged in the manufacture and sale of a product known as "Beauty Mate Comb". Leonard Marsano and his wife, Lillian Marsano, owned about 52-1/2% of the capital stock and plaintiffs Jack K. Livingston, et al., owned about 47-1/2%.

The stockholders, majority and minority, decided to sell their shares and placed an advertisement in the Wall Street Journal. Defendant Krown Chemical Manufacturing, Inc. negotiated with stockholders and a contract was signed on December 22, 1967.

For their shares, the Marsanos received $31,000 and 2,000 shares of Krown capital stock. The Krown shares were placed in escrow subject to certain conditions. Krown agreed to pay the plaintiff minority stockholders, 120 days after January 3, 1968, $46,000 for their shares which were escrowed.

Krown failed to pay the $46,000 and the minority stockholders commenced this action against Krown and the Marsanos.

The trial court, finding that there were misrepresentations by the sellers, denied the minority stockholders specific performance but, nevertheless, awarded them $46,000 as damages.[1] It rejected Krown's counterclaim for rescission, confirmed the Marsanos' right to retain the $31,000 and the 2,000 shares of Krown stock, rejected the Marsano counterclaims against Krown and required Leonard Marsano to assign to Krown the patent for the Beauty Mate Comb. The Court of Appeals affirmed. 50 Mich App 153; 212 NW2d 775 (1973).

We affirm, but remand for further proceedings.

[1] The court thus gave the minority stockholders the equivalent of specific performance as "damages".

## I.

Krown, relying on *Farrell v Hannan Real Estate Exchange,* 251 Mich 669, 672–673; 232 NW 209 (1930), contends that damages cannot be awarded when specific performance has been denied because of the plaintiff's fraudulent conduct. In *Farrell,* this Court adopted the trial court's opinion refusing to award money damages on denial of specific performance: "obviously, if the plaintiff has not made out such a case here as entitles him to consideration in a court of equity, money damages may not be properly awarded to him. Such damages are awarded only in lieu of equitable relief, in the strict sense of the term."

Krown would distinguish the two cases relied on by the Court of Appeals, *Herpolsheimer v A B Herpolsheimer Realty Co,* 344 Mich 657; 75 NW2d 333 (1956), and *Michigan Sugar Co v Falkenhagen,* 243 Mich 698; 220 NW 760 (1928), where this Court said that money damages can be awarded in lieu of equitable relief. *Herpolsheimer* was not an action for specific performance; the plaintiff sought equitable superintendence of a claimed constructive trust, an accounting and ancillary relief. The plaintiff in *Michigan Sugar,* in contrast with the minority stockholders in this case, was not denied equitable relief because of inequitable or fraudulent conduct on its part.

Professor Corbin wrote, "[i]ndependently of codes of procedure and other statutes, it became generally established in the United States that a bill for specific performance would be retained for the assessment of damages, in lieu of the remedy asked, if the bill stated a case that was proper for equity jurisdiction and the only reason for refusal of the decree asked was because performance had become impossible or for some reason inequitable

* * * ". However, "[i]f the plaintiff's case is not
one that is normally the subject of equity jurisdic-
tion, one in which his own conduct has made an
equitable remedy unavailable * * * the plaintiff's
bill will seldom be retained for assessment of his
damages unless the case falls within the provisions
of statutes like those referred to below". 5A Corbin
on Contracts, § 1161, pp 197, 199–200.

*Michigan Sugar* appears to be a case where
specific performance "had become impossible or for
some reason inequitable". Defendant had oversold
and delivered the commodity, creating rights in a
third party.

Corbin cites *Farrell* as a case in which plaintiff's
conduct made an equitable remedy unavailable.

But Corbin further explained that as a result of
modern codes of procedure in most jurisdictions:

"[A] single system of courts has been established with
both common law and equity jurisdiction. It is generally
provided also that the court may grant other forms of
relief than that expressly sought by the plaintiff. Under
such statutes, the court may assess damages in lieu of
specific performance if the facts established in the suit
show the plaintiff to be entitled to damages, *whether a
former court of equity would have retained a bill for
such a purpose or not.* The assessment of damages may
rest upon the plaintiff's right thereto by virtue of
common law rules or statute, as well as upon earlier
doctrines of equity. Such statutes should be given the
most liberal of application in order to avoid unneces-
sary litigation. It is true, however, that some courts
with the combined jurisdiction have failed fully to
understand their true function in this respect." 5A
Corbin on Contracts, § 1161, pp 201–203. (Emphasis
supplied.)

The Michigan Constitutions of 1850 and 1908
provided, "The legislature shall, as far as practica-
ble, abolish distinctions between law and equity

proceedings".[2] The 1963 Constitution provides, "The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state. The distinctions between law and equity proceedings shall, as far as practicable, be abolished."[3] The Judicature Act of 1915 and the Revised Judicature Act of 1961, adopted before the effective date of the 1963 Constitution, authorized the Supreme Court by general rules to abolish, as far as practicable, distinctions between law and equity.[4]

Despite the 1850 and 1908 constitutional directives to the Legislature, the objective was not achieved. The Judicature Act of 1915 provided that "legal and equitable causes of action shall not be joined".[5]

The long-sought reform was achieved in the General Court Rules of 1963. GCR 1963, 12 provides "There shall be 1 form of action to be known as a 'Civil Action' ". The accompanying committee comment states, "It is the intention of this rule to abolish all distinctions insofar as practicable between law and equity. * * * To carry out this philosophy, reference should be made to Rule 203 in which it is made clear that claims of legal and equitable nature may be joined under the circumstances as therein limited."[6]

GCR 1963, 203.1 provides, "A complaint shall state as a claim every claim either legal or equitable" which the pleader has against any party

[2] Const 1850, art 6, § 5. Const 1908, art 7, § 5.

[3] Const 1963, art 6, § 5.

[4] 1915 PA 314, Ch I, § 14; MCLA 600.223; MSA 27A.223.

[5] 1915 PA 314, Ch VIII, § 1; 1948 CL 608.1; MSA 27.591.

[6] See 1 Honigman & Hawkins, Michigan Court Rules Annotated, p 9. GCR 1963, 12 is based on F R Civ P 2. See, generally, 4 Wright & Miller, Federal Practice & Procedure, §§ 1041–1045.

arising out of the transaction or occurrence that is the subject-matter of the action and does not require the presence of third parties of whom the court cannot acquire jurisdiction. GCR 1963, 111.2, 111.9(2) provide that a pleader may state as many separate claims or defenses as he has "whether based upon legal or equitable grounds or upon both".

The minority stockholders, thus, could properly join claims seeking legal and equitable relief. However, they did not. Their complaint against Krown asserted that "compensation in damages would be inadequate and incalculable". The relief sought "[a]s to Count One" was specific performance and such other and further relief "as shall be agreeable to equity and good conscience".

However, the Revised Judicature Act permits amendment after judgment has been entered "in affirmance of the judgment".[7] The deficiencies in plaintiffs' pleadings do not preclude an award of damages as an alternative to specific relief.

No reason appears for concluding that Krown's trial defense against the assessment of damages was prejudiced by plaintiffs' failure to amend before judgment.

We are remanding for further proceedings for other reasons. On remand amendment may be allowed and Krown may be afforded an opportunity to introduce any additional evidence opposing the plaintiffs' damage claim.

---

[7] "After judgment rendered in any cause, any defect or imperfections in matter or form, contained in the record, pleadings, process, entries, returns, or other proceedings, may be rectified and amended by the court, *in affirmance of the judgment, so that such judgment shall not be reversed or annulled;* and any variation in the record, from any process, pleading or proceedings had in such cause, shall be reformed and amended according to such original process, pleading or proceeding." MCLA 600.2311; MSA 27A.2311. (Emphasis supplied.)

## II.

Krown's principal assertion is that it had a right to rescind because of misrepresentations by Leonard Marsano, who acted for himself, Lillian Marsano and the plaintiff minority stockholders. The asserted basis for rescission became known to Krown three months after it acquired Marsano, Inc. and by the end of April or early May, 1968 it had decided not to pay further money. This was well before a meeting in July, 1968, arranged between the minority stockholders' and Krown's representatives after Krown had indicated by letter of June 6 that it did not intend to pay for the Marsano, Inc. stock. The only evidence of a tender of the minority stockholder's stock is the following testimony by a Krown representative concerning the July meeting:

"*Q.* Did you on this particular case, offer the return of your stock to Mr. Livingston and to the other minority stockholders through their attorneys Messrs. May?

"*A. I said they could have their stock. I had no way of paying for it.*

"*Q.* And did anybody respond to this statement?

"*A.* Well, I don't know if they responded, but we went into it a little further discussion of was I interested in even getting rid of my fifty-one per cent.

"*Q.* And then what if anything took place"?

"*A.* They said they'd let me know as to whether they would take their stock back or not.

"*Q.* And did they ever let you know whether they were going to take their stock back?

"*A.* They sure did. They started litigation." (Emphasis supplied.)

Krown took no other step to rescind until after the September 17, 1968 commencement of this

action by the minority stockholders.[8] By then Krown had sold and disposed of much of the Marsano, Inc. assets and transferred some corporate assets to itself.

"Rescission wholly abrogates the contract and restores the parties to a *status quo;* but covenant perpetuates the contract and affords the moving litigant his rights thereunder. Because of this difference courts have uniformly required a plaintiff in rescission to assert his right to rescind without any unnecessary delay." *Wall v Zynda,* 283 Mich 260, 265; 278 NW 66; 114 ALR 1521 (1938).

The trial court concluded that there had not been a disaffirmance of the contract by Krown and that there was a "lack of tender".

The combination of delay in tendering the Marsano, Inc. stock and the transfer to Krown of Marsano, Inc. assets justified the trial court's decision not to award rescission.

### III.

The Wall Street Journal advertisement stated "Liabilities: $900.00". Actually, there was a liability of $12,750 to Montgomery Ward. The Wall Street Journal advertisement also used the phrase "patented new Beauty electric comb". The patent was issued to Leonard Marsano, not Marsano, Inc.

The trial court found that Krown properly believed that it was acquiring the shares of a corpo-

---

[8] Krown's November, 1968 answer did not formally seek rescission. It contains an affirmative defense based on the claimed misrepresentations, asserts failure of consideration and asks that the contract be cancelled and for damages. A counterclaim for rescission was filed in July, 1969; there Krown pled for the first time that it had tendered the Marsano, Inc. stock and "renewed" its tender.

*See, also,* GCR 1963, 518.3; 4 Wright & Miller, Federal Practice & Procedure, § 1043, pp 147, 149, § 1044, p 151.

ration which owned the patent and directed Leonard Marsano to assign the patent to Marsano, Inc. After the Marsano, Inc. shares were acquired by Krown, Marsano, Inc. exercised without challenge ownership rights in the patent; Krown suffered no damage.

The liability to Montgomery Ward was shown on Marsano, Inc.'s books and records. Leonard Marsano asserted that Krown had access to those books and records, but this was disputed. The trial court concluded that "even if Krown was given free access to the books, Marsano never proved that Krown's knowledge, even after examination of said books, was informatively complete as to negate the reliance on the false $900 liability assertion".[9]

The trial court thus concluded that the nondisclosure of the $12,750 liability to Montgomery Ward resulted in an understatement of liabilities. Yet its opinion does not explain why the $46,000 damage award was not reduced on account of this understatement of liabilities. The cause is remanded to the trial court for a statement on the record of why the $46,000 damage award to the plaintiffs was not reduced on that account and for possible modification of the award if this appears warranted after further hearing and proceedings.[10]

The judge who presided in this case has resigned. Upon application by either the plaintiff minority stockholders or Krown to this Court, he will be assigned to complete this case. See Const

---

[9] The court rejected Krown's claim that Leonard Marsano promised to produce $46,000 profit selling combs in the Japanese market.

[10] It appears that nothing has been paid on the judgment obtained by Montgomery Ward against Marsano, Inc.

"*Q.* Fine, but I will ask you once more. Did you pay anything to Montgomery Ward in connection with that suit?

"*A. [By Krown representative]:* No, sir."

1963, art 6, § 23; *Dauer v Zabel,* 381 Mich 555, 558; 164 NW2d 1 (1969).

Affirmed and remanded. Costs to appellees.

T. G. KAVANAGH, C. J., and WILLIAMS, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

SWAINSON, J., and the late Justice T. M. KAVANAGH took no part in the decision of this case.