TOMEI v BLOOM ASSOCIATES, INCORPORATED

OPINION OF THE COURT

1. NEGLIGENCE—EVIDENCE—MALPRACTICE—ORAL SURGEONS—STANDARD OF CARE.

Sufficient evidence was presented in a dental malpractice case to indicate that the defendant breached the standard of care expected of an oral surgeon, and thereby to avoid a directed verdict, where the defendant admitted that he had failed to discover that a tool had broken off in the plaintiff's jaw, and where testimony indicated that prudent practice would be to inspect dental equipment after working in a patient's mouth to see if the equipment is still intact.

2. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT—PROXIMATE CAUSE.

The Court of Appeals must consider the evidence in a light most favorable to the plaintiff when considering the question of proximate cause and a defendant's motion for a directed verdict on this issue.

3. JURY—PREJUDICE OF JUROR—INFERENCE OF PREJUDICE.

A trial court properly ruled that a new trial was not necessary because a juror's wife attended the trial and had lunch with her husband where the court held a voir dire to allow examina-

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians and Surgeons §§ 117, 128, 137.
   Liability of dentist to patient. 83 ALR2d 7.
   Malpractice: liability of physician, surgeon, anesthetist, or dentist for injury resulting from foreign object left in patient. 10 ALR3d 9.
[2] 5 Am Jur 2d, Appeal and Error §§ 608, 849.
[3] 47 Am Jur 2d, Jury §§ 195–201.
   Communication or contact between juror and outsider during trial of civil case. 64 ALR2d 158.
[4] 75 Am Jur 2d, Trial §§ 582, 592–595.
[5, 9] 22 Am Jur 2d, Damages §§ 109, 274.
[6, 9] 22 Am Jur 2d, Damages § 276.
[7] 22 Am Jur 2d, Damages § 366.
[8] 75 Am Jur 2d, Trial § 214.

tion of both the juror and his wife and was satisfied that there was no evidence of wrongdoing and where there is no affirmative showing of prejudice, and the facts do not clearly establish an inference of juror prejudice.

4. TRIAL—INSTRUCTIONS TO JURY—JUDGE'S DISCRETION—REQUESTED INSTRUCTIONS.

It is within the discretion of a trial court, and often preferable, to give the substance of requested jury instructions in a clear and well-connected manner rather than to read each specific request.

5. PLEADING—DAMAGES—EXCESSIVE DAMAGES—AMOUNT SOUGHT BY PLAINTIFF—AMENDMENT OF PLEADINGS.

A jury may award damages in an amount greater than that sought; however, the amount sought is one factor to be considered in determining whether an award is excessive and proper amendment of the pleadings is required.

6. PLEADING—AD DAMNUM—DAMAGES—EXCESSIVE DAMAGES— AMENDMENT OF PLEADINGS—JUDGE'S DISCRETION.

Awards in excess of the *ad damnum* clause are not allowed without proper amendment of the *ad damnum* clause; however, it is discretionary with the trial court to allow amendment after the jury award to conform to the award, and such amendment should be liberally granted unless the jury award is not supported by the evidence.

7. DAMAGES—PLEADING—REMAND—EXCESSIVE DAMAGES—AD DAMNUM.

A case should be remanded for entry of judgment in the amount asked for in the complaint or, in the alternative, for a new trial on the issue of damages only where the jury awarded damages far in excess of those asked for in plaintiffs' *ad damnum* clause, there were no facts discovered or proved which were not available to plaintiffs when they filed their complaint, and where the nature of the injury which is the basis for the damages does not support an award of the amount granted.

8. EVIDENCE—CLOSING ARGUMENTS.

Statements made during closing argument are not evidence.

CONCURRENCE IN PART, DISSENT IN PART BY BASHARA, J.

9. DAMAGES—MALPRACTICE—EXCESSIVE DAMAGES—PLEADING— AMENDMENT OF PLEADINGS—AD DAMNUM.

*A jury award of damages for dental malpractice in the amount of*

*$275,000, although plaintiffs had only asked for $110,000, is not shocking to the conscience in view of the permanency of the injury, the effect on the injured plaintiff's social and marital relationships, and her life expectancy, and the plaintiffs should be allowed to amend the complaint to conform to the jury award.*

Appeal from Wayne, Michael L. Stacey, J. Submitted March 2, 1977, at Detroit. (Docket No. 27901.) Decided May 17, 1977.

Complaint by Claire Tomei and Frank Tomei against Bloom Associates, Incorporated, Herbert J. Bloom and Myron Kaufman for damages for malpractice. Judgment for plaintiffs. Defendants appeal. Remanded with instructions.

*Goldsmith, Yaker & Goldsmith,* for plaintiffs.

*Harvey, Kruse & Westen, P. C.* (by *Mark D. Shoup),* for defendants.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

D. E. HOLBROOK, P. J. Plaintiffs, Claire Tomei and Frank Tomei, her husband, brought an action in the Wayne County Circuit Court against Doctors Kaufman and Bloom and Bloom Associates, alleging medical malpractice. On November 20, 1975, a jury returned a verdict in favor of Claire Tomei in the amount of $260,000 and in favor of Frank Tomei in the amount of $15,000. Defendants brought timely motions for directed verdict, *remittitur,* judgment notwithstanding the verdict and new trial. All these motions were denied and defendants now appeal as of right.

There is little dispute as to the basic factual

---

* Circuit judge, sitting on the Court of Appeals by assignment.

setting involved in the instant case. Plaintiff Claire Tomei was referred to defendant Dr. Kaufman by her family dentist on August 5, 1968. The defendant, an oral surgeon, performed surgery on the plaintiff in order to remove an impacted lower molar. The defendant used a bone bur, a type of dental drill, to perform this operation on plaintiff. During the procedure, part of the bur broke off and remained embedded in plaintiff's jaw. Defendant did not realize that this had occurred.

Plaintiff had no immediate problems following the surgery. Approximately two years later, however, plaintiff woke up one morning with a toothache. The next day plaintiff began to experience numbness in her lower left jaw. Mrs. Tomei then sought treatment from her family dentist who removed the lower left second molar.

Unfortunately, the numbness continued and plaintiff returned to defendant's office. Defendant Dr. Bloom, an associate of Dr. Kaufman, then took a panarex X-ray of plaintiff's mouth and detected a foreign object in her lower left jaw. Dr. Bloom then made arrangements with plaintiff to have the object removed at Sinai Hospital.

Plaintiff, confused and upset, sought the advice of her family physician, who advised her to get an additional opinion. Plaintiff then chose to have the surgery performed by Dr. Reaume, another oral surgeon, and plaintiff's expert witness at trial. Dr. Reaume was able to remove the object; however, plaintiff continues to experience numbness in her lower left lip and chin. Dr. Reaume testified that there is a 90 per cent chance that this condition is permanent. The foreign object removed did, in fact, turn out to be a piece of broken bone bur.

Defendants initially contend that a directed verdict should have been given because there was no

evidence at trial that there was a violation of the standard of care expected of an oral surgeon. Our review of this contention is limited. *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975). There was testimony adduced at trial that, particularly when viewed favorably to the plaintiff, could establish a breach of the duty of care. *Dodd v Secretary of State,* 390 Mich 606; 213 NW2d 109 (1973). The defendant admitted in a deposition that was read to the jury that the bur broke off in the plaintiff's jaw and that he failed to discover this fact. Expert testimony introduced at trial indicated that it would be prudent practice procedure to inspect the bone bur after an operation of this sort. Defendant himself testified that it is a basic concept of normal practice to check dental equipment after working in a patient's mouth to see if that equipment is still intact. There was sufficient evidence to indicate that defendant breached the standard of care expected of an oral surgeon. *Daniel v McNamara,* 10 Mich App 299; 159 NW2d 339 (1968), *Winchester v Chabut,* 321 Mich 114; 32 NW2d 358 (1948). See, Anno., *Malpractice: Liability of Physician, Surgeon, Anesthetist, or Dentist for Injury Resulting from Foreign Object Left in Patient,* 10 ALR3d 9 (1966).

The most difficult and troubling problem involved in this case is the question of proximate cause. Defendants maintain that the jury was allowed to speculate and, assuming *arguendo* that defendant was negligent and that plaintiff suffered an injury, the proof was insufficient as to this element of malpractice. The problem is complicated by the fact that plaintiff's unfortunate condition did not result until a substantial length of time following the surgery. Again when considering the question of proximate cause and defend-

ants' motion for directed verdict on this issue, we must consider the evidence in a light most favorable to plaintiff. *Caldwell v Fox, supra, Daniel v McNamara, supra.* Plaintiff's expert gave the following testimony:

"*Q.* [by plaintiff's attorney] Doctor, do you have an opinion as to what caused Mrs. Tomei's numbness?

"*A.* [Dr. Reaume] Well, at the time I saw her—again, following the nerve back—she had symptoms of mandibular nerve. The most logical assumption at that time and date was the fact the metallic object was approximately in the nerve situation before it was removed.

"*Q.* And do you have any cause to change that opinion today?

"*A.* No, there are no other causes. But I haven't—

"*Q.* But none to change your opinion—

"*A.* No.

"*Q.* —as to the most logical, likely cause?

"*A.* Right.

"*Q.* And after the questions that have been asked by you—by the attorney for the defendants, have you changed your mind about the testimony that you gave on direct?

"*A.* No, I haven't changed my mind, not to my knowledge.

"*Q.* The questions didn't cause you to want to change your answers in any way?

"*A.* No.

"*Q.* As to your opinion or causes—

"*A.* No.

"*Q.* —and effects?

"*A.* No."

Defendants' experts testified that plaintiff's condition was more likely attributable to other cuases. The Supreme Court has fully considered proper review of a motion for directed verdict.

"It seems that we must constantly remind those

interested in negligence law that a motion by the defendant for a directed verdict presents no question of credibility, also that the trial judge may not select among actual or seeming contradictory statements of a witness given on direct examination and cross-examination what he believes should be applied to the motion. Instead, the movant automatically stipulates that, for the purposes of his motion only, the trial judge may and should apply the submitted evidence in that light which our reports have portrayed steadily since these passages appeared a full century ago in the *Van Steinburg* Case *(Detroit & Milwaukee R Co v Van Steinburg* [1868], 17 Mich 99, 117, 118):

" 'In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence. For the purposes of any positive instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it.' " *Schedlbauer v Chris-Craft Corp.* 381 Mich 217, 229–230; 160 NW2d 889 (1968).

See also *Viland v Winslow,* 34 Mich App 486; 191 NW2d 735 (1971) (malpractice action involving dentist), *Pippen v Denison Division of Abex Corp,* 66 Mich App 664; 239 NW2d 704 (1976). The trial court properly denied the motion for a directed verdict.

Defendants also maintain that a new trial is required because it was discovered that a juror's wife attended the trial and had lunch with her husband. Defendants admit that there was no evidence that the wife communicated with her juror husband concerning the instant case. How-

ever, defendants contend that a new trial is necessitated because it can be inferred that they did, in fact, discuss the case.

The trial court had instructed the jury on several occasions not to discuss the case. All jurors indicated that they would not. In addition, upon learning of this situation the trial court held a voir dire in order to allow defendants' attorney an opportunity to examine the juror and his wife. The trial court was completely satisfied that there was no reasonable evidence of any wrongdoing. There is no affirmative showing of prejudice nor do these facts clearly establish an inference that juror prejudice occurred. *People v Stanley,* 71 Mich App 56; 246 NW2d 418 (1976). The trial court properly ruled that a new trial was not necessary.

Defendants also allege that the trial court erred in refusing to give defendants' requested instructions. We find this contention meritless. The trial court acted properly within its discretion in giving proper instructions in its own manner. *Cody v Marcel Electric Co,* 71 Mich App 714; 248 NW2d 663 (1976). It is often preferable for the trial court to give the substance of the requested charges in a clear and well-connected manner rather than to read each specific request. *Stouffer v Fletcher,* 146 Mich 341; 109 NW 684 (1906).

The jury herein returned an award of $260,000 for Mrs. Tomei and $15,000 for Mr. Tomei. Defendants contend that this amount is clearly excessive and that the trial court abused its discretion by failing to order *remittitur.* The court did indicate that the jury award was substantially more than the court itself would have granted. We must note that plaintiffs in their complaint only sought damages of $100,000 and $10,000 respectively. A jury may award greater damages than those sought;

nevertheless, that is one factor to consider in determining whether an award is excessive. *Gibeault v City of Highland Park,* 49 Mich App 736; 212 NW2d 818 (1973), *aff'd* 391 Mich 814 (1974), *Piatkowski v Mok,* 29 Mich App 426; 185 NW2d 413 (1971), GCR 1963, 518.3. Proper amendment to the pleadings is required.

*Remittitur* is a procedural process by which a verdict of the jury is reduced. Our Court described *remittitur* as follows:

"The use of *remittitur* by the trial judge is well-established under Michigan law. Broadly defined, *remittitur* is the procedural process by which a verdict of the jury is diminished by subtraction. In the typical case, the plaintiff, on a motion by the defendant for a new trial because of an excessive verdict, is given an election to remit a portion of the amount or submit to a new trial. Where there are no other errors in the trial, *remittitur* can be ordered only if the verdict is so excessive as to 'shock the judicial conscience', *Stevens v Edward C Levy Co,* 376 Mich 1, 4; 135 NW2d 414 (1965), *McKay v Hargis,* 351 Mich 409, 419; 88 NW2d 456 (1958), *Asmus v Barrett,* 30 Mich App 570, 578; 186 NW2d 819 (1971), *Powers v City of Troy,* 28 Mich App 24, 40; 184 NW2d 340 (1970).

"Clearly, the trial judge is not empowered to go through *de novo* review of the verdict returned by the jury. The *remittitur* power should be exercised with restraint. The courts are even more reluctant to allow jury verdicts in personal injury cases to be disturbed. The rationale for that deference to the jury is found in the early case of *Watrous v Conor,* 266 Mich 397; 254 NW 143 (1934):

" 'There is and can be no absolute standard by which we can measure the amount of damages in personal injury cases. Individual opinions may differ as to the correctness of awards, even those made by trial judges. It has yet to be determined whether the judgment of a one-man jury is sounder than that of 12. * * * Adopting defendant's contention that, at best, the showing

here is only one of pain and suffering, plus expenses for medical services and hospitalization attention, we still prefer our rule stated in the case of *Weil v Longyear,* 263 Mich 22 [248 NW 536 (1933)], that the amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts. Assuming even that our verdict might be in a different amount, we are loath to disturb verdicts for personal injuries on the ground that the amount is excessive.' 266 Mich at 401.

See also, *O'Grady v Rydman,* 347 Mich 606; 81 NW2d 383 (1957), *Cleven v Griffin,* 298 Mich 139; 298 NW2d [sic] 482 (1941), *Morgan v Engles,* 13 Mich App 656; 164 NW2d 702 (1968), *shirley [sic] v The Drackett Products Co,* 26 Mich App 644; 182 NW2d 726 (1970), and *Dillard v Braunstein,* 32 Mich App 216; 188 NW2d 203 (1971), for similar reasoning.

"With the extra regard for the jury assessment in personal injury cases, the 'shock the conscience' test becomes:

" ' "As long as the amount awarded is within the range of the evidence, and within the limits of what reasonable minds might deem just compensation for such imponderable items as personal injuries sustained and pain and suffering, the verdict rendered should not be set aside." ' *Stevens v Edward C Levy Co,* 376 Mich 1, 5; 135 NW2d 414 (1965)." *Pippen v Denison Division of Abex Corp,* 66 Mich App 664, 674–675; 239 NW2d 704 (1976). (Footnote omitted.)

Obviously shocking the conscience is a highly subjective test. Nevertheless, we must apply the facts herein to this test to determine if the award does shock our conscience. Plaintiff herein has suffered no disfiguring injury. She has not lost the use of any part of her body. Her ability to be gainfully employed and/or to maintain her home and care for her children is not reduced. Plaintiff has suffered no pain other than some hypersensitivity to cold weather. She does experience a numbness in an area the size of a quarter in the area of the lower left lip. Testimony concerning

her damages was somewhat ambiguous; essentially she claimed damages for the mental suffering which resulted from this numbness.

Plaintiff, however, did have a permanent condition and a life expectancy of 40 years. She testified that she does have this numbness in her lip which strains her relationship with her husband because her feeling toward kissing him has changed. She is also self-conscious about eating in front of others. Although there is no pain or physical impairment, she occasionally cannot feel food which escapes her mouth in that area and which causes a mess. She has also burned herself by unintentionally putting hot foods on this numb area. She testified that her self-consciousness about this fact has resulted in curtailment of social activities and a change in life-style.

This Court is, as it should be, reluctant to overturn a jury award. Plaintiffs sought in their complaint damages of $110,000, however, plaintiffs' counsel asked in closing argument for damages in the amount of $400,000. Plaintiff does not suffer pain, does not suffer impairment of earning capacity, has shown no disfigurement, and has suffered no physical restrictions. The question concerning the propriety of allowing a jury award of damages greater than that asked for has been frequently considered by Michigan courts. Michigan courts have traditionally held that no award greater than that asked for in the *ad damnum* clause could be upheld. *Corfeld v Douglas Houghton Hotel Co,* 324 Mich 459; 37 NW2d 169 (1949), *Kellom v City of Ecorse,* 329 Mich 303; 45 NW2d 293 (1951). Confusion has resulted, however, as to the effect of GCR 1963, 518.3, which provides in pertinent part: "Except as to a party against whom a judgment is entered by default, every final judgment shall

grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." In *Phillips v Rolston,* 376 Mich 264; 137 NW2d 158 (1965), the Supreme Court again considered the problem of awards in excess of the *ad damnum* clause and held, in accordance with prior law, that such awards were not proper and, furthermore, that amendment of the pleadings to conform with the jury award would not be allowed. Strangely enough the Court did not consider the effect of GCR 1963, 518. Apparently the Supreme Court has reconsidered its position and now holds that amendment of the pleadings may be allowed. *Gibeault v City of Highland Park,* 391 Mich 814 (1974) (adopting the opinion of the Court of Appeals, 49 Mich App 736; 212 NW2d 818 [1973]). See also, *Piatkowski v Mok,* 29 Mich App 426; 185 NW2d 413 (1971). The proper resolution of this issue now appears to be that awards in excess of the *ad damnum* clause are not allowed unless there was proper amendment. However, amendment of the *ad damnum* clause after the jury award to conform with the award is discretionary with the trial court. See *Michigan Mutual Liability Insurance Co v Fruehauf Corp,* 63 Mich App 109; 234 NW2d 424 (1975). The trial court should, however, liberally grant such amendment unless the jury award is not supported by the evidence. *Gibeault, supra.*

Plaintiffs sought damages totalling $110,000 ($100,000 for Claire Tomei and $10,000 for Frank Tomei). The jury awarded $275,000. We realize that failure to amend the pleadings to conform to the award is usually a technical error. However, consideration of such an amendment does require the court and the parties to consider the matter fully. We feel the trial court when granting a

motion to amend the *ad damnum* clause must consider the reason for the amendment and can only grant the motion when the award is supported by the evidence. Herein there was no evidence sufficient to support this excessive award. Plaintiffs do not contend that facts were discovered or proved which were not available to them when they filed their complaint asking for $110,000. The proofs submitted at trial were exactly those proofs contemplated by plaintiffs when they initially sought $110,000. The award was prompted by plaintiffs' request for $400,000 damages during closing argument. Statements made during closing argument are not evidence and this request when unsupported by the evidence cannot support this excessive award.

In effect, therefore, we rule that *remittitur* was required on the basis of the record herein. We must remand for entry of judgment in the amount asked for in the complaint or in the alternative, if plaintiffs are not satisfied, then remand for a new trial on the issue of damages alone. *Kellon v City of Ecorse, supra.* No costs.

W. F. Hood, J., concurred.

Bashara, J. *(concurring in part, dissenting in part).* I concur in the result reached by the majority in all respects except for the question of the trial court's failure to order *remittitur.* The amount of the jury award was not shocking to the conscience of this writer in view of the permanency of the condition, the effect on her social and marital relationships, and her life expectancy. I would affirm the action of the trial court and allow the plaintiffs to accordingly amend the complaint. *Livingston v Krown Chemical Manufacturing Inc,* 394 Mich 144; 229 NW2d 793 (1975).