MICHIGAN BELL TELEPHONE COMPANY v C & C EXCAVATING
COMPANY

Docket No. 77-4895. Submitted November 8, 1978, at Detroit.—Decided January 3, 1979. Leave to appeal denied, 406 Mich 930.

Plaintiff, Michigan Bell Telephone Company, contracted with defendant C & C Excavating Company for certain construction work. The contract called for C & C to supply proof that subcontractors and materialmen had been paid and allowed Michigan Bell to withhold payment to C & C until such proof was furnished. During the construction C & C abandoned the project. Michigan Bell filed an interpleader action against defendants C & C Excavating Co., Stock Brothers, Inc., W. C. Investment Corp., Shores Re-Steel, Inc., Troy W. Maschmeyer Co., Midway Supply Co., Price Brothers Co., Auburn Supply Co., Inc., and the Michigan Department of Treasury to determine the rights of potential claimants to a sum of money still due C & C on the contract. Default judgments were entered against all defendants except the Department of Treasury, Shores Re-Steel and Auburn. The Department of Treasury cross-claimed a lien in excess of the amount due on the contract for income taxes withheld and motor fuel taxes accrued and unpaid. Auburn counterclaimed against Michigan Bell alleging the contract between Michigan Bell and C & C, the failure of C & C to provide proof of payment of subcontractors and materialmen, and delivery of labor and materials to C & C under the contract for which a balance was due. Shores Re-Steel counterclaimed also alleging the contract and delivery of labor and materials thereunder for which it was owed and, in addition, alleged that Michigan Bell was negligent in failing to withhold payment to C & C until furnished with evidence of payment of subcontractors' and materialmen's claims and alleged a wrongful disclosure to a writ of garnishment previously served on Michigan Bell. The Macomb Circuit Court, Hunter D.

References for Points in Headnotes

[1, 2] 72 Am Jur 2d, Statute of Frauds § 251.
    72 Am Jur 2d, Statute of Frauds § 589.
[2] 73 Am Jur 2d, Statute of Frauds § 565.
[3] 72 Am Jur 2d, State and Local Taxation §§ 898-903.

Stair, J., found Michigan Bell negligent in continuing to make payments under the contract to C & C after C & C abandoned the project and entered judgments against Michigan Bell in favor of the Department of Treasury, Auburn and Shores Re-Steel. Michigan Bell's motion for a new trial or for amendment of the judgments was denied. Michigan Bell appeals. *Held:*

1. Neither the contract provision nor an alleged oral promise by Michigan Bell's agent to pay the debts of the contractor can form the basis of recovery on the subcontractors' counterclaims, nor does payment of some subcontractors render Michigan Bell liable to others.

2. There was no evidence justifying a finding that Michigan Bell was liable for back taxes owed by C & C.

3. The Michigan Treasury Department's lien for accrued and unpaid income tax withholdings and motor fuel taxes and penalties is prior to a claim by a subcontractor who does work for the taxpayer after the taxes and penalties accrued and applies to monies due the taxpayer on a contract under which the subcontractor supplied the work.

Reversed and remanded.

1. FRAUDS, STATUTE OF—LABOR AND MATERIAL BONDS—PROMISE TO PAY DEBT OF ANOTHER—CONTRACTS IN WRITING.

A property owner's indirect promissory representation that a labor and material bond would be given by the general contractor who contracted to construct a building on the owner's property can not create a more binding obligation than a direct promise to the plaintiff, a subcontractor, to pay him or to see that the general contractor pays him; in such a case, the law is clear and well settled that such promises must be in writing under the statute of frauds (MCL 566.132; MSA 26.922).

2. FRAUDS, STATUTE OF—CONTRACTS—SUBCONTRACTOR—PAYMENTS—MECHANIC'S LIEN—ESTOPPEL—ORAL PROMISE TO PAY.

The action of a property owner in making payments to a subcontractor does not create an obligation to pay, in the absence of a writing; similarly, the subcontractor's forbearance from perfecting his mechanic's lien does not create an estoppel such as to support an oral promise to pay made by the property owner.

3. TAXATION—INCOME TAXES—WITHHOLDING TAXES—MOTOR FUEL TAXES—LIENS—PRIORITY OF LIENS.

The Michigan Treasury Department's lien for accrued and unpaid income tax withholdings and motor fuel taxes and penalties is prior to a claim by a subcontractor who does work for the taxpayer after the taxes and penalties accrued and applies to

monies due the taxpayer on a contract under which the subcontractor supplied the work.

*Werner M. Killen,* for plaintiff.

*Charles J. Moceri,* for defendant Auburn Supply Co., Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Alan H. Broad,* Assistant Attorney General, for defendant Michigan Department of Treasury.

*Peterson & Hay, P.C.,* for defendant Shores Re-Steel, Inc.

Before: ALLEN, P.J., and R. M. MAHER and J. E. TOWNSEND,* JJ.

R. M. MAHER, J. Michigan Bell Telephone Company brought this interpleader action to determine rights of potential claimants to a sum of money due defendant C & C Excavating for services rendered under a construction contract between Bell and C & C Excavating, as general contractor. Other defendants include various subcontractors and the Michigan Department of Treasury. Default judgments were entered against all defendants except the Department of Treasury and two subcontractors. The Treasury Department, Shores Re-Steel, Inc., and Auburn Supply Company, Inc., filed answers and cross-claims alleging priority of their claims to the subject fund. Shores Re-Steel and Auburn Supply also filed counterclaims against plaintiff Michigan Bell, alleging that plaintiff was liable for certain sums due them from the general contractor, C & C Excavating, for work

---

* Circuit judge, sitting on the Court of Appeals by assignment.

performed and materials supplied for the job performed for Michigan Bell by C & C.[1] From judgments rendered against Bell in favor of the Treasury Department, Auburn Supply and Shores Re-Steel, Michigan Bell now appeals.

Auburn Supply based its counterclaim on a provision of the contract between Michigan Bell and C & C Excavating which provides as follows:

"The Contractor, if required by the Construction Superintendent before the making of any payment, or at any time during the progress of the work, shall furnish said Construction Superintendent with evidence, in such form as the Construction Superintendent shall require, that all claims, causes of action for damages and all claims or liens for payment of wages or salaries or for payment for tools, machinery or supplies have been paid, released or settled, and in case such evidence be not furnished as aforesaid, such amount as said Construction Superintendent may consider necessary to meet any and all of such claims, shall be retained from any moneys otherwise due the Contractor hereunder, until such claims, causes of action or liens shall have been fully satisfied and until such evidence shall have been furnished."

Shores Re-Steel also relied on the above-quoted contract provision, alleging in one count that it was a third-party beneficiary of the contract between Michigan Bell and C & C Excavating, and that Michigan Bell breached a duty owed to subcontractors under the contract with C & C to withhold payment from C & C until C & C furnished evidence that claims of subcontractors had been paid. In a second count, Shores Re-Steel

---

[1] C & C Excavating, apparently as a result of financial difficulties, had abandoned the job prior to completion and had ceased functioning, leaving a number of subcontractors and materialmen unpaid. The fund which is the subject of Michigan Bell's interpleader action apparently represents the remaining amount due C & C for work performed prior to the time it abandoned the job.

alleged that Michigan Bell was negligent in failing to withhold payment from C & C until furnished evidence of payment of claims. In a third count, Shores Re-Steel alleged wrongful disclosure by Michigan Bell in response to a writ of garnishment served on Bell on November 2, 1973, in connection with a lawsuit brought by Shores Re-Steel against C & C Excavating.

Although the pleadings alleged primarily that Michigan Bell was negligent in failing to withhold payment from C & C Excavating under its contract until C & C furnished evidence of payment to subcontractors, the evidence presented at trial was directed at establishing that Michigan Bell's agent had agreed to pay the subcontractors' accrued claims against C & C Excavating. The trial court's opinion, on the other hand, states that once C & C abandoned the project, Michigan Bell assumed the role of general contractor and thereby assumed C & C's obligations to the subcontractors. The trial court also ruled that Michigan Bell negligently continued to pay C & C after it became aware that C & C had abandoned the project. Thus it appears that the counterclaims were pled on one theory, tried on a second theory and decided on still a third theory. We find, however, that none of the theories presented entitles counterplaintiffs to recover from Michigan Bell.

Dealing first with Shores Re-Steel's challenge to the garnishment disclosure, we agree with the trial court that Shores' failure to file a timely challenge to the disclosure under GCR 1963, 738.6 and 738.9 bars it from raising the issue in this proceeding.

Prior to trial, all parties stipulated to the validity of the claims asserted by defendants against C & C Excavating. It was further agreed that the

question of priority of claims to the interpleader stake would be submitted for decision on briefs to be filed after the trial. The sole issue upon which testimony was taken was the counterclaims of Auburn Supply and Shores Re-Steel against Michigan Bell.

Auburn Supply presented testimony of Daniel Alexander, the secretary-treasurer of C & C Excavating, Inc., to the effect that he told a representative of Michigan Bell, one Ed Heichel,[2] at the end of July, 1973, that C & C was in financial difficulties and could not finish the job, and that Alexander would undertake to finish the job started by C & C, forming a new company for that purpose. Alexander further testified that Heichel agreed to pay subcontractors directly, and did in fact pay some subcontractors. He testified that he sent letters to Mr. Heichel authorizing direct payment of Auburn Supply and Shores Re-Steel. Stephen Messina, president of Auburn Supply, testified that he believed on the strength of Mr. Alexander's telephone conversation with Mr. Heichel, which he overheard, that his company would be paid directly by Michigan Bell for past and future deliveries of materials.[3] Messina acknowledged that no representative of Michigan Bell had ever told him directly that Bell would pay him.

As evidence in support of its counterclaim, Shores Re-Steel adopted the testimony of Daniel Alexander and entered into evidence a writ of garnishment previously served on Michigan Bell.

---

[2] Heichel died prior to trial, and plaintiff Michigan Bell objected to Alexander's testimony, on grounds that it was barred by the dead man's statute, MCL 600.2166; MSA 27A.2166. Plaintiff raises this issue on appeal as well. However, because of our disposition of the other issues raised on appeal, we do not reach the issue of admissibility of Alexander's testimony.

[3] He testified that subsequent deliveries totaled $884.17 in price.

All the many theories raised in this case allege negligence on the part of Michigan Bell. In order to recover on a negligence theory, the subcontractors must prove that Michigan Bell owed them a duty, that it breached that duty and that they were damaged as a result of that breach, *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967). The primary theory pled by the subcontractors in their counterclaims was that Michigan Bell's duty to them arose out of Bell's contract with C & C Excavating. The evidence presented at trial sought to establish that Michigan Bell promised to pay C & C's obligations to its subcontractors. The theory on which the trial court apparently based recovery was that Michigan Bell assumed the obligations of C & C Excavating by continuing the construction project after it knew of C & C's precarious financial position.

The Supreme Court dealt with the first two theories in *Roulo v Automobile Club of Michigan,* 386 Mich 324; 192 NW2d 237 (1971), a case similar on its facts to the case at bar. In *Roulo,* as in the case now before us, the general contractor on a construction project went bankrupt, leaving a subcontractor unpaid. The subcontractor sued the owner of the building which was the subject of the contract, claiming that the owner was negligent in not requiring the general contractor to furnish a labor and material bond, as specified in the construction contract. The trial court granted defendant's motion for summary judgment for failure to state a cause of action, and the Supreme Court affirmed. The *Roulo* Court noted that plaintiff alleged negligence, and could therefore recover only if defendant owed him a duty and breached that duty. The Court rejected the claim that a duty to subcontractors could arise out of a bond

requirement in the general contract, *Roulo, supra,*
328–329:

"Plaintiff * * * tells us that the defendant undertook
to render him assistance in collecting his bill from the
contractor; that such undertaking was in the form of
requiring the contractor to furnish a bond; that the
assistance was rendered negligently in that the defend-
ant failed to secure the bond as undertaken.

"The theory is ingenious, but it does not fit.

"The owner's indirect promissory representation that
a bond would be given can hardly create a more bind-
ing obligation than a direct promise to the plaintiff to
pay him or see that the general contractor pays him.

"In such a case, the law is clear and well settled.
MCLA § 566.132 (Stat Ann 1970 Rev § 26.922) provides
that such promises must be in writing. We have many
times held this statute applicable to cases of this kind.
*Welch v. Marvin* (1877), 36 Mich 59; *Carr v. Leavitt*
(1884), 54 Mich 540; *Dupuis v Improvement Co.* (1891),
88 Mich 103; *Ramsdell v The Citizen's Electric Light &
Power Company* (1894), 103 Mich 89; *Wilhelm v Voss*
(1898), 118 Mich 106; *Sherman v. Alberts* (1908), 153
Mich 361; *Raridan v. Bick* (1932), 259 Mich 200.

"Even the action of the owner of making payments to
the subcontractor does not create an obligation to pay,
in the absence of a writing. *Preston v. Young* (1881), 46
Mich 103."

Accord, *Shurlow Tile & Carpet Co v Farhat,* 60
Mich App 486; 231 NW2d 384 (1975).

The situation in the case at bar is identical to
that presented in *Roulo, supra,* with the additional
factor of an alleged oral promise by Michigan
Bell's agent to pay the contractor's debts. Neither
the provision in Bell's contract with C & C Exca-
vating nor the alleged oral promise to pay C & C's
obligations can form the basis of recovery on the
subcontractor's counterclaims.[4]

---

[4] We are aware of the rule that the Statute of Frauds must be pled

Regarding the theory that Michigan Bell assumed the role of general contractor when C & C abandoned the project, we find that the facts simply will not support such a theory. Alexander testified that when it became apparent that C & C would be unable to continue, he formed his own company and undertook (with the knowledge of Heichel) to complete the project in the name of C & C Excavating, in order to protect his own reputation in the construction business. Thus it seems clear that if anyone assumed the role of general contractor, it was the new company formed by Alexander, not Michigan Bell. The fact that Bell in fact paid some subcontractors does not create an obligation to pay others, *Roulo, supra.*

The trial court in its opinion dealt exclusively with the counterclaims against Michigan Bell, making no reference to the original interpleader action. When the Department of Treasury presented a proposed judgment awarding the interpleaded fund to the State of Michigan, the court altered it to award a money judgment against Michigan Bell for the amount of the interpleaded fund. Michigan Bell claims that the trial court erred in awarding the Treasury Department a money judgment when the Treasury filed no counterclaim and sought only to claim the interpleaded fund. The Treasury Department, on the other hand, urges us to hold that the judgment entered was in fact nothing more than an award of the interpleaded fund.

GCR 1963, 518.3 gives trial courts broad powers to grant relief to the prevailing party, even if such relief has not been demanded in the pleadings,

as an affirmative defense, GCR 1963, 111.7; *Trisch v Fairman,* 334 Mich 432; 54 NW2d 621 (1952). We are of the opinion that such a requirement may be considered waived where, as here, the alleged oral promise was itself not pled.

*Tomei v Bloom Associates, Inc,* 75 Mich App 661; 255 NW2d 727 (1977); see also *Livingston v Krown Chemical Mfg, Inc,* 394 Mich 144; 229 NW2d 793 (1975). The relief granted, however, must be supported by the evidence adduced at trial, *Tomei, supra.* In the case before us there is no evidence which would justify a finding that Michigan Bell is personally liable for the back taxes owed by C & C Excavating.

Having concluded that none of the parties is entitled to a money judgment against Michigan Bell, we must determine which of the three claimants is entitled to the interpleaded fund. The Department of Treasury contends that it is entitled to the fund by virtue of withholding and motor fuel tax liens authorized by MCL 206.351; MSA 7.557(1351), MCL 206.431; MSA 7.557(1431) and MCL 207.114; MSA 7.304, and recorded on November 7 and November 9, 1973, pursuant to MCL 211.682; MSA 7.753(52). Auburn Supply and Shores Re-Steel contend that the tax liens never attached to the interpleaded funds because C & C Excavating was required by MCL 570.151; MSA 26.331[5] to hold those funds in trust for subcontractors and materialmen, and C & C therefore never had title to the said fund. This argument, however, ignores the provision of the Michigan Income Tax Act which requires an employer to hold taxes withheld from wages as a trustee for the state, MCL 206.351; MSA 7.557(1351). The same statutory section provides

---

[5] The cited section reads as follows:

"In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes."

that such taxes are payable to the state within 15 days after the end of the month in which they are withheld.[6] The affidavit attached to the Treasury Department's amended answer sets forth its claim (undisputed by Auburn and Shores) that as of the end of June, 1973, more than $15,000 in unpaid taxes and penalties had accrued. It is thus clear that a trust in favor of the state for more than the amount interpleaded had arisen prior to the time defendants Auburn and Shores performed the work upon which their claims are based.[7]

The Treasury Department's lien is prior to all other unrecorded liens, MCL 206.431; MSA 7.557(1431), and against all liens attaching after recording of the tax liens.[8] The Department of Treasury is therefore entitled to the interpleaded fund. We remand to the trial court for entry of a judgment to that effect.

Reversed and remanded for proceedings consistent with this opinion.

---

[6] MCL 206.351; MSA 7.557(1351), prior to its amendment, provided in pertinent part:

"(2) The taxes withheld under this section shall be returned and paid to the department by the employer within 15 days after the end of any month in which the amount withheld exceeds $100.00. In the case of lesser amounts payment shall be made within 15 days after the end of the quarter period ending in March, June, September and December.

"(3) Every employer required by this section to deduct and withhold taxes on compensation shall be liable for the payment thereof to the state and shall not be liable to any individual for the amount of such payment."

[7] The exhibits and evidence reveal that the materials were furnished and the work was performed by Auburn and Shores during July, August and September of 1973.

[8] Shores Re-Steel obtained a judgment against C & C Excavating on December 23, 1974. However, the tax liens had already been recorded and therefore are prior to Shores Re-Steel's judgment lien.