*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAMIN FATTY,

      Plaintiff/Counterdefendant-Appellant,

v

FARM BUREAU INSURANCE COMPANY OF
MICHIGAN,

      Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
November 21, 2023

No. 363888
Wayne Circuit Court
LC No. 21-000686-NF

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

In this first-party no-fault action, plaintiff/counterdefendant appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendant/counterplaintiff on the basis of finding plaintiff's fraud was grounds for contract rescission and reimbursement of benefits paid. We affirm.

## I. FACTS

This case arises out of a motor vehicle accident in which plaintiff sustained bodily injuries. At the time of the accident, plaintiff was insured by defendant Farm Bureau under the no-fault act, MCL 500.3101 *et seq.* Plaintiff obtained insurance with defendant on July 17, 2019. On the application for insurance, plaintiff answered the following question in the negative: "Are any vehicles to be insured used to carry persons for a fee?"

Plaintiff applied for no-fault benefits associated with the accident. Over a phone call with a Farm Bureau employee, plaintiff stated the accident happened "at about 6-7 pm," that he was not working, and he was with his brother at the time of the accident. Plaintiff identified his passenger as Arfang Ceesay, who he later disclosed was a friend. Plaintiff received treatment for his injuries at Columbia Clinic among other medical facilities, and indicated to providers that he was "rear-ended as an Uber driver."

Plaintiff filed his complaint claiming he was entitled to no-fault benefits for medical expenses, wage loss, replacement services, and other personal protection insurance (PIP) benefits.

-1-

Plaintiff was deposed, testifying he was alone and on his way to meet someone to purchase a cell phone for resale at the time of the accident. Plaintiff said he did not have a formal job, but made money through buying and reselling items online.

In defendant's interrogatories, plaintiff was asked to describe how the accident occurred and he responded:

> *A.* On the date of the accident and to the best of his memory, Plaintiff was driving on Ford Road from his home in Novi to meet a potential customer. He was in the process of slowing down as he approached an intersection when he was struck from behind by an unidentified driver. After he was hit, both Mr. Fatty and the other driver pulled over to exchange insurance information. Police did not arrive on the scene but in the following days Mr. Fatty attempted to make a police report at the police station but was unsuccessful due to lack of cooperation from the unidentified driver. The accident occurred at around 6:30 p.m. . . .

Uber records indicate plaintiff began working as an Uber driver in early May 2019, and drove for Uber on the day of the accident. Plaintiff's drive log shows he picked up a rider at 6:05 p.m. and dropped them off at 6:30 p.m. Plaintiff picked up another rider at 6:38 p.m. and dropped them off at their destination at 6:50 p.m. Plaintiff continued picking up riders and completing trips that night until 8:17 p.m.

Ceesay, plaintiff's alleged passenger, stated in his deposition that he was not a passenger in plaintiff's car on the day of the accident.

> *Q.* Mr. Fatty reported to his insurance company, Farm Bureau, that you were a passenger in the car when that accident happened. Were you a passenger in a vehicle that was in an accident in January of 2020?
>
> *A.* No.
>
> *Q.* Do you know why Mr. Fatty would say that you were a passenger in the vehicle that was involved in an accident?
>
> *A.* I mean, I don't know because I was not there. You know, he just called me one day, say, "Hey, I have a [sic] accident. I'm—I put your name there. You was in the passenger." Say, "Why did you do that? I was not there. Why did you do that?" He said—I told him, "You want to get me in trouble." He said, "No, you're not going to be in any trouble. Because I don't want, you know—I don't want—I don't want them to know I was driving without you." So I say, "I don't want to be in trouble." He said, "You're not going to be in no trouble." But to be honest, I just—I have no idea about that accident.
>
> * * *
>
> *Q.* Do you know if Mr. Fatty does driving for, like, Uber or Lyft?

*A*. I mean, yeah. That's what he told me. He said he don't want them to know he was driving a [sic] Uber. And that's what he was doing. And I—you know, and that's what he was doing. He said he don't want them to know that he was doing it.

*Q*. I see. So it's your testimony today that Mr. Fatty told you that he was driving somebody for Uber. But he didn't want people to know that he was driving for Uber, so he said you were driving—or you were with him instead?

*A*. That's what he told me.

*Q*. That's what he told you?

*A*. Yes, that's what he told me. That's his—that's the reason why he put, you know—he said he put my name I was there with him.

After this discovery, defendant sought leave to amend its complaint to assert a fraud in the procurement defense, a fraud under the policy defense, a wrongful conduct defense, and a statutory defense under MCL 500.3113(B). Defendant also sought to file a counterclaim on the basis of fraud, requesting reimbursement of benefits paid to or on behalf of plaintiff with regard to the accident. The trial court granted leave, and defendant filed its amended answer and affirmative defenses, requesting rescission or a finding of no entitlement to coverage. Defendant sought $104,730.82, plus attorney fees and costs, as reimbursement.

Defendant moved for summary disposition of plaintiff's claim and defendant's counterclaim under MCR 2.116(C)(10). The trial court granted defendant summary disposition on April 5, 2022, rescinding the policy of insurance and declaring it void *ab initio* because of plaintiff's material misrepresentation in his application for insurance, and concluding that under the policy language coverage was excluded when transporting persons for a fee. The trial court found that whether plaintiff was driving a passenger at the time of the accident was "not relevant." Because the April 5, 2022 order did not discuss defendant's counterclaim, defendant filed a second motion for summary disposition under MCR 2.116(C)(10), regarding the counterclaim only. Defendant argued, in addition to the reimbursement of PIP benefits, it was entitled to $16,172.70 in attorney fees under the no-fault act, and $2,599.50 in costs under the court rules. Plaintiff responded, repeating the arguments made in opposition to the dismissal of his claims and arguing defendant waived any claim to reimbursement by its tardiness in seeking this remedy.

The trial court granted defendant's motion for summary disposition of the counterclaim, including its request for reimbursement of $104,730.82 for benefits paid, because the policy was rescinded under the doctrine of fraud in the procurement. The trial court also found plaintiff's fraud entitled defendant to attorney fees under the no-fault act, and costs. Specifically, the trial court found the requested costs of $2,599.50 were reasonable, and awarded $10,000 in attorney fees. Plaintiff appeals.

## II. STANDARD OF REVIEW

We review a trial court's ruling on summary disposition de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In considering a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). The court must consider the evidence submitted in the light most favorable to the nonmoving party, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford County*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018).

The question of the availability of insurance under a statute is a question of statutory interpretation. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). And we review de novo whether the trial court properly interpreted relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Additionally, "[t]o the extent that this review requires the construction and interpretation of court rules, this Court applies a de novo standard of review." *Tindle v Legend Health, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360861); slip op at 1.

"The interpretation of a contract is a question of law reviewed de novo on appeal." *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) (quotation marks and citations omitted). "Insurance policies are contracts and . . . are subject to the same contract construction principles that apply to any other species of contract." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012) (quotation marks and citation omitted). "[T]he primary goal of contract interpretation is to ascertain and effectuate the intent of the contracting parties. The law presumes that the contracting parties' intent is embodied in the actual words used in the contract itself." *City of Grosse Pointe Park v Mich Municipal Liability & Prop Pool*, 473 Mich 188, 218-219; 702 NW2d 106 (2005). An insurance contract is read "as a whole" and courts give contractual language its plain and ordinary meaning. *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006).

The findings of fact underlying an award of attorney fees are reviewed on appeal for clear error, *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), while the decision whether to award attorney fees will be reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on review of the entire record, is left with a definite and firm conviction a mistake was made. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). An abuse of

discretion occurs when the court's decision is outside the range of reasonable and principled outcomes. *Khouri*, 481 Mich at 526.

## III. SUMMARY DISPOSITION OF THE CLAIM

The trial court properly rescinded the insurance policy because plaintiff committed fraud in the procurement of the contract by explicitly denying using his vehicle to carry passengers for a fee. Because of this rescission, summary disposition of plaintiff's claims was appropriate, without regard to whether plaintiff was driving for Uber at the time of the accident.

Foundationally, because PIP coverage is mandatory under the no-fault act, a "provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated." *Meemic Ins Co v Fortson*, 506 Mich 287, 302-303; 954 NW2d 115 (2020). A demonstration of actionable common-law fraud must establish:

> (1) That [the insured] made a material representation; (2) that it was false; (3) that when [the insured] made it [they] knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the insured] made it with the intention that it should be acted upon by [the insurer]; (5) that [the insurer] acted in reliance upon it; and (6) that [the insurer] thereby suffered injury. [*Titan Ins*, 491 Mich at 555.]

Regarding the first element in statements made for the purposes of a claim, this Court has previously recognized, "[a] statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Mina v General Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997). Additionally, "a fact or representation in an application is material where communication of it would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001) (quotation marks and citation omitted). The insurer is "not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the grounds of fraud in the application for insurance, even when the fraud was easily ascertainable . . . ." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 403; 919 NW2d 20 (2018).

Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 162; 742 NW2d 409 (2007). Additionally, "[i]t is the well-settled law of this state that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void *ab initio*." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). Rescission is the proper remedy for fraud in the inducement because there is a lack of mutual assent and "[w]here mutual assent does not exist, a contract does not exist," *Meemic Ins*, 506 Mich at 306-307. Fundamentally, an insurer has a reasonable right to expect honesty in the application for insurance. *Bazzi*, 502 Mich at 407. Rescission abrogates the contract and restores the parties to their relative positions had the contract never been made. See *id*. at 408. "A court must not hold an insurance company liable for a risk

that it did not assume." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999) (citation omitted).

In his application for insurance, plaintiff unequivocally stated he was not using his vehicle to carry persons for a fee. This statement was not made by representations provided in bulk by defendant for plaintiff's signature, but rather as a negative answer to one of 15 binary questions in the five-page application: "Are any vehicles to be insured used to carry persons for a fee?" At the time he answered this question, plaintiff had been driving for Uber for two months. The clarity of the application question and the uncontested employment records establish elements two, three and four of common-law fraud: a false statement, knowing falsity, and intentionality. *Titan Ins*, 491 Mich at 555. As to elements five (defendant acted in reliance on the representation) and six (defendant suffered injury), we know that defendant acted in reliance on plaintiff's answer because defendant accepted the application and provided insurance coverage. And finally, we know that defendant suffered an injury by paying benefits to plaintiff in connection with the car accident. Thus, the parties only contest whether the first element, materiality, is met here.

As to materiality, a litigation representative for defendant Farm Bureau stated in an affidavit that the "specific purpose" of the application question was to allow defendant "to determine insurance eligibility… so that it can fully assess risk." She also stated, "Had Mr. Fatty informed Farm Bureau in his Application that he was using his 2013 Dodge Charger to carry persons for a fee . . . , Farm Bureau would have refused Mr. Fatty's request for insurance coverage because it creates a significantly higher risk to Farm Bureau as an insurer." Though plaintiff characterizes this testimony as self-serving, he provides no evidence to refute it, only speculation on the interaction between the application question and the policy coverage exclusion. However, "parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact," *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Thus, defendant's evidence in the form of the litigation representative's affidavit is unrefuted and it establishes the materiality of the misrepresentation. Because "communication of [the truth] would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium," *Oade*, 465 Mich at 253-254, plaintiff's denial of carrying passengers for a fee was a material representation.

Because defendant successfully established fraud in the procurement, and requested rescission, *Rooyakker & Sitz*, 276 Mich App at 162, defendant was "entitled to rescind the policy and declare it void *ab initio*," *Lake States Ins*, 231 Mich App at 331. Thus, the trial court properly granted summary disposition and dismissal of plaintiff's claim. Having established the validity of the grant of summary disposition of plaintiff's claims on the grounds of fraud in the procurement, we need not address defendant's alternative arguments for dismissal of plaintiff's claims.

IV. SUMMARY DISPOSITION OF THE COUNTERCLAIM

Reimbursement of the PIP benefits paid to plaintiff was an appropriate remedy following rescission. Because the claim was fraudulent and defendant was the prevailing party, the award of attorney fees and costs was also proper.

Fraud in the procurement of a contract can serve as grounds for monetary damages in an action at law. *Titan Ins*, 491 Mich at 557-558. Having found rescission was appropriate, and because rescission abrogates the contract and restores the parties to their relative positions had the contract never been made, reimbursement of PIP benefits paid by defendant on the policy is an appropriate remedy. After arguing rescission was inappropriate, the only argument plaintiff makes in opposition to reimbursement of PIP benefits is that defendant was untimely in seeking rescission, waiving any claim to reimbursement. Our Supreme Court has stated parties wishing to rescind a contract are required to attempt rescission "without any unnecessary delay." *Livingston v Krown Chemical Mfg, Inc*, 394 Mich 144, 152; 229 NW2d 793 (1975).[1]

Defendant claims it did not receive the medical records mentioning Uber as plaintiff's employer until after plaintiff's deposition on April 26, 2021, and though it presents nothing confirming the delivery of these records, the lack of any deposition questions about Uber, or carrying passengers for a fee in general, impliedly corroborates this assertion. Further, plaintiff presents no evidence to support his contention defendant was provided these records before the spring of 2021. Defendant subpoenaed Uber's records of plaintiff's employment on May 27, 2021, and after some correspondence, Uber provided the records months later, on September 16, 2021. Only at this point did plaintiff have evidence of plaintiff's employment with Uber at the time of his insurance application. With grounds to seek leave to assert a fraud in the procurement defense and a counterclaim, defendant filed its motion for leave to amend on October 29, 2021. On December 18, 2021, the trial court granted defendant leave to amend its answer and file a counterclaim, and 10 days later defendant filed its counterclaim, seeking reimbursement of PIP benefits, and attorney fees and costs. On January 12, 2022, defendant moved for summary disposition of plaintiff's claim and defendant's counterclaim, though the trial court did not issue its decision regarding the counterclaim for another nine months.

A review of this time line discredits plaintiff's contention defendant waited "years" to seek rescission, and does not show "unnecessary delay" on defendant's part. See *Livingston*, 394 Mich at 152. Also of note, the no-fault act contains a one-year notice requirement under MCL 500.3145(1):

> An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury may not be commenced later than 1 year after the date of the accident that caused the injury unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. [MCL 500.3145(1).]

---

[1] This Court is not strictly required to follow opinions decided before November 1, 1990, but they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases. MCR 7.215(J)(1); *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

This Court has found this one-year back rule applies to insurer subrogation matters even when there is a mistake of fact. See *Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339, 347; 715 NW2d 324 (2006). Because the insurer of priority was not notified of plaintiff's injury before the one-year anniversary of the accident, defendant is likely precluded from obtaining subrogation. Plaintiff's fraud likely foreclosed defendant's ability to seek reimbursement from the insurer of priority, making the trial court's grant of reimbursement of PIP benefits to defendant proper.

Turning to the award of attorney fees and costs, MCR 2.625(A)(1) states, "Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." Plaintiff fails to identify any applicable exception to this rule. "Where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned," *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Any argument against the award of costs to defendant, the prevailing party, is therefore abandoned.

Attorney fees are generally not recoverable unless expressly allowed, such as by statute or court rule. *Haliw v City of Sterling Heights*, 471 Mich 700, 707; 691 NW2d 753 (2005); *In re Waters Drain Drainage Dist*, 296 Mich App 214, 218; 818 NW2d 478 (2012). One exception to this rule is recovery of legal fees incurred as the result of another's fraudulent or unlawful conduct. *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006). In addition, MCL 500.3148(2) of the no-fault act states:

> A court may award an insurer a reasonable amount against a claimant as an attorney fee for the insurer's attorney in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. A court may award an insurer a reasonable amount against a claimant's attorney as an attorney fee for defending against a claim for which the client was solicited by the attorney in violation of the laws of this state or the Michigan rules of professional conduct. [MCL 500.3148(2).]

The no-fault act places the decision whether to award attorney fees to an insurer on the basis of a fraudulent claim firmly within the trial's court's discretion, stating the "court *may* award an insurer . . . attorney fees." MCL500.3148(2) (emphasis added). See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008) (the term "may" generally designates discretion.) Accordingly, we review a trial court's award of attorney fees and costs for an abuse of discretion. *Khouri*, 481 Mich at 526. We will affirm the trial court's award if it is within the range of reasonable and principled outcomes. *Id.* Importantly, the amount of attorney fees awarded by the trial court is not challenged by plaintiff, only the propriety of any award.

The trial court properly awarded attorney fees to defendant under MCL 500.3148(2). Defendant was forced to defend against a claim pursued under a policy that was procured by fraud. Therefore, the award is within the range of reasonable and principled outcomes and was not an abuse of discretion. Accordingly, the award of attorney fees and costs to defendant was proper.

V. CONCLUSION

The trial court properly rescinded the contract because plaintiff committed fraud in the procurement by explicitly denying he used his vehicle to carry passengers for a fee. Because of this rescission, summary disposition of plaintiff's claims was appropriate, without regard to whether plaintiff was driving for Uber at the time of the accident. Furthermore, the trial court's grant of reimbursement of the PIP benefits was an appropriate remedy following rescission. Because the claim was fraudulent and defendant was the prevailing party, the award of attorney fees and costs was also proper. Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado